[No. 4,044.]

IN THE MATTER OF THE ESTATE OF ROBERT W. DURHAM, DECEASED.

SALE BY EXECUTORS UNDER POWER IN WILL.—When a will contains a naked power authorizing the executors to sell the property of the testator, the executors may sell without an order by the Court, but must report an account thereof under oath, and must procure an order fixing the day for hearing the report and give notice thereof, and unless there are special directions in the will, must conduct the sale in all respects as if made by an order of the Court, and have it confirmed by the Court.

IDEM.—If the Probate Court makes an order confirming such sale without

legal notice having been given, it may set aside the order as having been made without jurisdiction.

IDEM.—The Court may vacate a sale made by the executors under such power, if a sum exceeding the price obtained by them, by at least ten per cent. exclusive of the expenses of a new sale, is offered, and may direct a resale.

APPEAL from the Probate Court, County of Butte.

The last will of Robert W. Durham was filed in the Probate Court of Butte county, on the 2d day of November, 1871, and was admitted to probate on the 27th day of February, 1872. The executors named in the will were Charles F. Lott and W. W. Durham, and letters were issued to them. The will contained the following clause:

"Item eight—It is my will, and I hereby direct, that all my personal property of every nature and kind (except money, bonds, notes and choses in action), including grain, cattle, hogs, horses, etc., and all my real estate not herein otherwise disposed of, be sold by my executors, hereinafter named, or their successors, on such terms, cash or credit, or partly for cash and partly on credit, as my executors may deem best; and that my bonds, notes and choses in action be collected and converted into money by my executors as soon as may be after my decease."

Acting under the authority of this provision of the will, the executors, in March, 1873, without an order of Court, advertised that they would sell the real property left by the testator, on the 23d day of April, 1873, at private sale, and invited bids. The appellant, Perkins, put in a bid and the executors awarded the property to him. On the 1st day of May, 1873, the executors made report of this sale to the Probate Court, and filed it with the clerk. No notice of the filing of this report was given, nor was any day appointed by the Court for hearing it, but on the 5th day of May, which was the first day of the May term, Perkins, the purchaser, appeared before the Court, and asked that the sale to him be confirmed, and the Court announced its decision in his favor from the bench, but no decree of confirmation was written or filed, till the 12th day of May.

Meantime, on the 9th day of May, the respondent, Grid-

ley, made and filed with the clerk, an offer to pay for the land ten per cent. more than the accepted bid of Perkins, exclusive of the expenses of a new sale; and afterwards, on the 19th of May, served and filed his motion to set aside the order of the Court confirming the sale to Perkins. This motion was heard by the Court on the 27th of May, and on the 11th of June, the Court made and filed its order vacating and setting aside the order of confirmation.

On the 7th day of July, the Court made an order appointing the 21st day of July, for hearing the executors' report of sale, and directing notice thereof to be given by the clerk. The hearing was continued by consent of the parties to the 20th day of August. On that day a hearing was had, and the Court made and filed its decree, declining to accept the offer of Gridley and confirm the sale to him, and vacating and setting aside the sale made to Perkins, and directing a resale.

Perkins appealed from the order setting aside and vacating the order confirming the sale to him, and from the order setting aside the sale to him, and from the order directing a resale. Perkins, on the 24th day of April, 1873, had paid the executors the sum of $14,766 66, being one third of the purchase-price, and they, on the 19th of May, 1873, executed to him a deed for the land, and he gave them back a mortgage to secure the balance.

The other facts are stated in the opinion.

*P. O. Hundley* and *Creed Haymond*, for the Appellant.

G. W. Gridley was not a party to the proceeding of confirmation of the sale, nor in any manner interested in the estate, nor was he a party to any proceeding had in the estate, and was not entitled to make a motion of any character in the estate. (*Garwood* v. *Garwood*, 29 Cal. 519; Code of Civil Procedure, Sec. 1553.) The power to sell and dispose of the real estate belonging to the estate of deceased persons may emanate from two sources.

First. From the Probate Court having jurisdiction of the estate upon a proper showing by petition, alleging the necessary facts and showing the necessity of such sale; and,

Second. From a power of sale contained in a will of the testator, directing the executor or executors therein named, to sell and dispose of the real estate belonging to said estate. (Code of Civil Procedure, Secs. 1536, 1561.) The power to sell emanating from the will is complete without any action on the part of the Probate Court. And the executor thus empowered to sell, is styled, "the donee of a power at common law and under the statute." (*Newton* v. *Bronson*, 13 N. Y. p. 592; *Conklin* v. *Egerton's Admr.*, 21 Wend. 430–6; *Norris* v. *Harris*, 15 Cal. 255; *Payne* v. *Payne*, 18 Cal. 303.) He acts in selling and "in conveying the land as the devisee of a power created by the owner of the estate, and not under an authority conferred by the" Probate Court.

The power to sell in this case was derived from the will of Durham, and not from the Probate Court. *Minnie* v. *Cox*, 5 John. Ch. R. 445–6.) The time, place and manner of the sale was left to the discretion of the executors; they were not subject to the control of the Probate Court in this respect, because the power to sell was not derived from the Court but from the will. The executors having exercised their discretion and power of sale in good faith, their action and judgment is conclusive. (*Bunner* v. *Storm*, 1 Sand. Ch. 359; *Champlain* v. *Champlain*, 3 Edw. Ch. 608; *McDerwent* v. *Lorillard*, 1 Edw. Ch. 274.) In cases where the will gives the power of sale, the Probate Court can exercise no control over the sale made by the executors. (See authorities above cited.) The power to make the conveyance follows by implication from the power to sell.

There is no limitation by the law of this State upon the power of disposition by will. (*Norris* v. *Harris*, 15 Cal. 256; Civil Code, secs. 1270–1274.) The sale of the lands in this case made by the executors was not subject to confirmation by the Probate Court. (*Norris* v. *Harris*, 15 Cal. 256.) The power to confirm a sale of real estate made by an executor or administrator, is derived from the order of the Court to sell. When the power to sell the estate does not emanate from the Probate Court but from the will of the testator, then there is no power in the Probate Court to

confirm the sale made by the executor. (*Gregory* v. *Taber*, 19 Cal. 410; Code of Civil Procedure, Sec. 1554.)

In the case of *Larco* v. *Casaneueva*, 30 Cal. p. 567, objection was made, that there had been no confirmation of the sale made by the executor under the power of sale in the will, by the Probate Court. The Court uses this language: "Under this will no action was necessary on the part of the Probate Court in any respect, to render a sale by the executor valid. It not being essential to the validity of the sale that it should be conducted in the statutory mode, the deed to Slaguna is clearly sufficient to pass the testator's title." (*Larco* v. *Casaneueva*, 30 Cal. 567–8; *Minnie* v. *Cox*, 5 Johns. Ch. R. 446.)

*Chas. E. Filkins* and *W. C. Belcher*, for the Respondent.

If the title passed absolutely by the deed of the executors, then there was no need of an application to the Court to confirm that sale.

It is hardly necessary here to discuss the question of the power of executors, when the will has, in express and unequivocal language, given them full authority to sell and convey the real property of the estate without an order of sale, or of confirmation, by the Probate Court. This case presents no such question. The will here directs the sale of the real property by the executors, and gives them discretion to determine whether such sale shall be made for cash, or on credit, or partly for cash and partly on credit, but it does not purport to authorize a conveyance without an order of confirmation. If such had been the intention of the testator, he would have used apt and direct words to express his intention. We may safely assert that the jurisdiction of the Court over the confirmation of such sales cannot be ousted unless the intention of the testator to that effect is clearly expressed.

It is the policy of the law to guard against the abuse of their trust by executors and administrators, by requiring the intervention of the Probate Court, to authorize and approve all sales of real property, and it will never allow them to proceed without this wholesome restraint, unless

the testator has plainly declared his desire that their power in the disposition of his estate should be as ample as in the disposition of their own.

In the cases quoted by appellant, there is a clear expression of the intention of the testator to give full power to the executor, and to take away from the Courts all supervision and control of the discretion of the executor.

By the Court, McKINSTRY, J.:

In *Delaney's Estate* (*ante* p. 76), the distinction is shown between a mere power in a will authorizing a sale by executors, and the devise of a legal estate in trust to carry out provisions of the will; and in *Tracy* v. *Tompkins*, decided from the Bench, (present term), the same distinction was recognized as continuing after the adoption of the Codes. In the one case, the freehold remains in the heirs until a sale; in the other it vests in the executors on the demise of the decedent. To the former class of cases the provision of section 178 of the Probate Act of 1851—that no sale should be valid, unless confirmed by the Probate Court, was applicable; to the same class are applicable sections 1,517 and 1,561 of the Court of Civil Procedure. The account of sale spoken of in section 1,561 is the same as the "return" mentioned in section 1,552 of the Code; and the statute evidently contemplates that the same proceedings shall be had, with respect to the return, when the sale is made under a power in a will, as when it is made under an order of Court. When, therefore, the will creates a naked power—a power not coupled with an interest—the executors must give notice of the sale, return accounts thereof, and, *unless there are special directions in the will*, must conduct the sale in all respects as if made under an order of Court. (Code of Civil Procedure, 1,561.) The sale must be reported under oath, and confirmed by the Probate Court, before the title to the property sold can pass. (Id. 1,517.) The necessity of confirmation implies the hearing and examination provided for in section 1,552 of the Code of Civil Procedure: that section requires, where the property is not sold at public auction—as was the fact in the present in-

stance—that certain notices be given of the hearing of the
return of sale, that the day of such hearing be fixed by
order, etc.   In the case at bar it is stipulated that no day
was fixed by order of the Probate Court or Judge, and that
"no notice of the hearing of the report or of the filing
thereof, was given by posting or publication;" and it does
not appear in the record that the persons interested in the
estate were actually present at the hearing in person, or by
attorney.  In the absence of proper notification, the Probate
Court had no power to confirm the sale, and the order pur-
porting to confirm it was properly set aside.   It is not of
importance to inquire whether Gridley had such an inter-
est in the estate as authorized him to move to set aside the
order of confirmation, since the Probate Court could annul
it whenever the attention of the Judge was called to the
circumstance that it had been made without acquisition of
jurisdiction over the persons of all interested.

Subsequently to the order setting aside the attempted
confirmation, the Probate Judge made the proper order
(under section 1,552 of the Code of Civil Procedure), ap-
pointing a time for a hearing on the report of sale, and or-
dering notice to be given as required by law; which notice
was duly given.   On the day to which the hearing was ad-
journed from the day fixed by the Judge, and in the notice,
the Probate Court, after evidence, found—in effect—that
the sum bid at the sale was disproportionate to the value
of the property; and, it appearing that a sum exceeding
such bid at least ten per cent., exclusive of the expenses of
a new sale, could be obtained, vacated the former sale, and
directed another to be had..  This the Probate Court had
the power to do, under the section of the Code last referred
to, and we see nothing in the transcript to induce us to be-
lieve that the power was not wisely exercised.

Orders affirmed.