[15138. Department One. — June 13, 1893.]

IN THE MATTER OF THE ESTATE OF HIRAM A. PEAR-
SONS, DECEASED. GUSTAVE HARSHALL, APPEL-
LANT.

' 98   603
102   573
98   603
125   432
98   603
136   603,
98   603
142   155

ESTATES OF DECEDENTS — CONFIRMATION OF SALE UNDER POWER IN WILL — APPEAL-
ABLE ORDER. — An order of the probate court confirming a sale of real property
belonging to an estate made under a power of sale contained in the will of the
decedent, and directing a conveyance to be made to the purchaser, is an appeal-
able order.

ID. — OBJECTIONS BY PURCHASER TO CONFIRMATION OF SALE — APPEAL — " PARTY
AGGRIEVED." — A purchaser of property of an estate at a sale thereof by the
executor, made under a power of sale in the will of the decedent, has a right to
file objections to a confirmation of the sale by the probate court, and is a party
"aggrieved" by an order of the court confirming the sale and directing the
making of a conveyance, and is entitled to appeal from such order.

ID. — CONSTRUCTION OF WILL — POWER OF SALE BY EXECUTOR. — A will which gives,
in the first clause thereof, to the aunts of the testator certain real property
described therein, and which gives to them in the succeeding clause "all real
property which I hold jointly with them," and directs in the same clause that in
the event of the death of either of them prior to his own, "all property of what-
ever nature herein bequeathed to them shall revert to and vest in the survivor,
her heirs, and assigns forever"; and that in the event of the death of both of
them prior to his own, "the aforesaid property otherwise bequeathed to them
shall be sold at public auction," and the proceeds divided equally among cer-
tain orphan asylums, and in another clause gives them a residuary bequest of
all the remainder of his property, "subject to the reversion before stated," au-
thorizes the executor upon the death of both of the aunts prior to that of the
testator to sell "all property of whatever nature" which would have been taken
by the aunts in case they or either of them had survived him, and does not
limit the sale to the property specified therein as that "which I hold jointly
with them," and a sale of the property described in the first clause of the will
by the executor is within the power granted.

ID. — MEANING OF "HEREIN." — "Herein," as used in legal phraseology, is a loca-
tive adverb, and may refer to a section, or to the entire instrument in which it
is used, and its meaning and application are to be determined by the context.

ID. — MEANING OF "AFORESAID." — There is no rule of construction which limits
the application of the term "aforesaid" to that which immediately precedes it;
nor is there any rule, where there is nothing in the nature of the case, or in
the subject to which it refers to indicate the contrary, which would justify pass-
ing over an intervening general designation of property to which the term
"aforesaid" refers, to limit its application to a special designation of particular
property in a previous portion of the clause.

ID. — EFFECT OF PETITION BY EXECUTOR FOR CONSTRUCTION OF WILL — POWER OF
SALE NOT DETERMINED — RIGHTS OF PURCHASER — CONFIRMATION OF SALE. —
The act of the executor of such will in petitioning the court for the construction
of certain clauses therein, after the probate of the will and before the sale of the
property, and to determine how the estate should be distributed, and what prop-
erty should be sold to pay the bequests to the different orphan asylums, upon
which the court refused to pass upon the question as to the power of the exe-
cutor to sell the property, upon the ground that the proper time for acting
thereon would be upon an application for distribution, and limited its judgment
to matters other than those affecting the land sold by the executor, does not ren-
der the title to the lands sold by him under the will so uncertain as to absolve

the purchaser from taking the same, or render it necessary for the court to refuse to confirm the sale.

ID. — Excessive Bequest for Charitable Purposes — Validity of Power of Sale. — The fact that the testator's bequest to charitable purposes is in excess of one third of his estate does not render a power of sale in the will invalid. A power of sale conferred by will does not depend for the validity of its execution upon a valid disposition of the proceeds of the sale, but depends merely upon the will of the testator, and may be conferred without any limitation.

ID. — Sale by Executor under Power — Duty of Purchaser — Objections to Confirmation. — A purchaser of property from an executor at a sale, under a power in the will, deals with him in making the purchase as he would with any other vendor, and it is incumbent upon such purchaser to examine the title for himself and point out any objections he may have to the title tendered him by the executor; and he cannot treat such sale as a judicial sale of property under the order of the court, and object to confirmation there by reason of facts impairing or defeating the title.

ID. — Marriage of Testator — Community Property — Pretermitted Children — Objections of Purchaser. — Objections cannot be urged by a purchaser of property from an executor at a sale, under a power in the will, to a confirmation of the sale, on the ground that the executor did not furnish proof as to whether the testator was married or not, and if so whether the property offered for sale was community property, and whether the testator left children surviving him whom he did not mention in the will, as such questions are questions of fact to be determined by the purchaser, and must be pointed out by him as objections to the purchase.

APPEAL from an order of the Superior Court of the City and County of San Francisco, confirming an executor's sale of real estate of an estate, and directing conveyances to be made.

The facts are stated in the opinion of the court.

*Jarboe & Jarboe, Napthaly, Freidenrich & Ackerman*, and *Rosenbaum & Scheeline*, for Gustave Harshall et al., Appellants.

*J. H. Moore*, for E. J. Moore, Executor, etc., Respondent.

HARRISON, J. — Hiram A. Pearsons died July 7, 1889, leaving a last will and testament, bearing date August 9, 1882, which was admitted to probate by the superior court of San Francisco, August 12, 1889, and letters testamentary issued thereon to Elliott J. Moore, who was named therein as its executor. On the 28th of January, 1892, the executor sold at public auction several parcels of land belonging to the estate of his testator, one of which was purchased by the appellant. The executor did not obtain any order of sale from the superior court,

but made the sales upon the contention that he had authority therefor by the terms of the will.   After he had made his return and asked for a confirmation of the sales, the appellant filed certain objections thereto, but upon the hearing the objections were overruled, and the court confirmed the sales and directed conveyances to be made.   From this order the purchaser has appealed.

1.  The order confirming the sale and directing a conveyance to be made is appealable.   Section 963 (3) of the Code of Civil Procedure authorizes an appeal to be taken from the superior court to the supreme court "from a judgment or order . . . . against or in favor of directing the partition, sale, or conveyance of real property."   There is no limitation upon the character of the proceeding in which the order directing the conveyance is made, and we are not authorized to limit the right of appeal more than it has been limited by the legislature.   The provisions of section 1553 of the Code of Civil Procedure are not a limitation of the right of filing objections to the confirmation of the sale, but an extension of such right to those who are "interested" in the estate.   The right of the purchaser to be heard at the hearing upon the return is implied in the provision of the previous section, which requires public notice of the day fixed for the hearing to be given, and his right to be heard carries with it the right to make objection to the confirmation, and section 938 of the Code of Civil Procedure gives the right of appeal to any party "aggrieved" by the action of the court, whether he be "interested" *in* the estate or not.

2.  The chief objection made by the appellant to the confirmation of the sale is that the executor was not authorized by the will to sell the property, and, as there had been no order of sale made by the court, the sale was incapable of confirmation by reason of the want of jurisdiction over the subject-matter.

Section 1651 of the Code of Civil Procedure provides: "When property is directed by the will to be sold, or authority is given in the will to sell property, the executor may sell any property of the estate without order of the court, and at either public or private sale, and with or without notice, as the executor may determine; but the executor must make return

of such sales as in other cases; and, if directions are given in the will as to the mode of selling, or the particular property to be sold, such directions must be observed. In either case, no title passes unless the sale be confirmed by the court."

The will in question contains the following provisions:—

"1. I give, devise, and bequeath unto Betsey Frances Matthewson and Polly Barton, my aunts, the following described lots and pieces of land situate in the city and county of San Francisco, state of California. (Describing the same.)

"2. I do give, devise, and bequeath unto Betsey Frances Matthewson and Polly Barton, my aunts, all real property which I hold jointly with them, and I direct that in the event of the death of either Betsey Frances Matthewson or Polly Barton, prior to that of my own, all property of whatever nature herein bequeathed to them shall revert and vest in the survivor, her heirs, and assigns forever. And furthermore, in the event of the death of both Betsey Frances Matthewson and Polly Barton prior to my decease, the aforesaid property otherwise bequeathed to them shall be sold at public auction to the highest cash bidder, the proceeds of said sale to be equally distributed among the different orphan asylums of the city and county of San Francisco, and said asylums I request to be designated by the judge of the probate court."

"7. I do give, devise, and bequeath the remainder of my property of whatever kind to Betsey Frances Matthewson and Polly Barton, subject to the reversion before stated. All the above real property being situated in the city and county of San Francisco, state of California."

Betsey Frances Matthewson and Polly Barton died prior to the death of the testator without leaving any descendants. By their death in the lifetime of the testator the testamentary disposition in their favor failed, but by virtue of the provisions of section 1343 of the Civil Code, the testamentary disposition of the property which had been devised to them did not fail, for the reason that it is apparent from the terms of the will that the testator intended to substitute the orphan asylums of San Francisco in their place. The provisions of section 1313 of the Civil Code, which preclude these beneficiaries from receiving more than one third of his estate, do not destroy

this intention, but merely prevent it from being carried into effect.

The property sold by the executor is a portion of that described in the first of the above clauses in the will, and his power to sell it without any previous order of the court depends upon the construction to be given to the latter portion of the second of the above clauses. The executor's authority to sell property is by the terms of the will brought into existence only in the event of the death of both of the testator's aunts prior to his own death. Upon the happening of that event he directed the aforesaid property to be sold at public auction to the highest bidder, and it is, therefore, necessary to ascertain what was the "aforesaid" property to which the authority was extended. On the one hand it is contended that the authority to sell which is given in the will is limited to the property disposed of in the second clause, while on the other hand it is contended that it extends to all the estate which would have been taken by his aunts in case they or either of them had survived him.

By his will the testator made his aunts his devisees of three different classes of property, viz.: 1. The specific lots of land described in the first clause thereof. 2. All property which he held jointly with them. 3. The residuum of his estate after satisfying his other dispositions thereof. The second clause of his will is devoted to three distinct subjects :—

1. The devise to the aunts of the property therein specifically described.

2. The provision for the nature of the estate while they shall take in the property which he leaves to them.

3. The disposition to be made of this property in case both of them should die before him. This latter subject also contains two testamentary provisions, viz.: that the property shall be sold at public auction, and that its proceeds shall be distributed among the orphan asylums of San Francisco.

After giving to his aunts all real property which he held jointly with them, he directs that in the event of the death of either of them prior to his own, "all property of whatever nature herein bequeathed to them shall revert to and vest in the survivor, her heirs and assigns forever." The evident purpose of the testator in this clause was to make his aunts joint ten-

aunts, with the right of survivorship in all the estate which they would receive under the will, although the use of the term "revert" in this connection is inappropriate and must be construed in connection with the term "vest," as expressive of his intention to confer the right of survivorship. The property thus directed by him to vest in the survivor is not limited to that which in the first part of the same clause was devised to them both. In that part of the clause he only disposes of "all real property which I hold jointly with them," while in the latter part of the clause he directs that "*all* property *of whatever nature* herein bequeathed to them" shall vest in the survivor, thus clearly indicating that he intended the right of survivorship to extend to other property than that which in the previous portion of the same clause he had devised to his aunts; nor does his use in this clause of the word "herein" limit the right of survivorship to the property which he had in that clause devised to them. "Herein," as used in legal phraseology, is a locative adverb, and its meaning is to be determined by the context. "It may refer to the section, the chapter, or the entire enactment in which it is used" (Anderson's Law Dict.), and this rule is applicable to the construction of a document, as well as of a statute. In the present case its reference to "all property of whatever nature" indicates its application to other property than "real property held jointly" with his aunts. We are not seeking to determine herein the extent to which the testator directed the right of survivorship to attach, since both of his aunts died in his lifetime; but the object of this discussion is merely for the purpose of ascertaining the intention of the testator, and the meaning which he gave to the words in his direction for the sale, that "the aforesaid property" be sold. Having provided for the contingency of the death of one of his aunts, the contingency of the death of both of them would naturally present itself to his mind, and it is reasonable to suppose that the provision which he would make for that contingency would be as extensive as that which he had made for the contingency of the death of only one of them. Accordingly he "furthermore" directs that in that event "the aforesaid property" be sold at public auction. There is no rule of construction which limits the application of the term "aforesaid" to that

which immediately precedes it, and in the present case there is nothing in the connection, or in the subject to which it refers, which would justify us in passing over the intervening clause in which the testator mentions "all property of whatever nature herein bequeathed to them," and limit its application to certain real property held jointly with his aunts, that had been designated in a previous portion of the clause. (See *Doe* v. *Gell*, 2 Barn. & C. 680.) In the absence of any qualifying terms, its natural reference would at least include that which next preceded it, and would be as comprehensive as the term to which it referred. We have already seen that the "property" for which he made provision in the event of the death of one of his aunts included "all property of whatever nature" that by his will he had given to both of them, and it follows that the provision for the contingency of the death of both of them is equally extensive. We hold, therefore, that the "aforesaid property" which the testator directed to be sold at public auction includes "all property of whatever nature," which in the sentence immediately preceding he refers to as having been bequeathed by him to his aunts.

3. After the will had been admitted to probate, and prior to the sale of the land involved in this appeal, the executor filed a petition in the superior court praying for the construction of certain clauses of the will and for a determination of his duties in reference thereto. In his petition he set forth the foregoing clauses of the will, and showed to the court that the aunts had died before the decedent; that the decedent left certain heirs-at-law, and that the bequest to the orphan asylums exceeded one third of his estate; that in the third clause of his will the testator had devised to a Mrs. Kinsey all his interest in a certain block excepting that which he held jointly with his aunts, and he asked the court to determine what portion of that block was held jointly by the testator with his aunts, who were the legatees, and who the next of kin, how the estate should be distributed, and what real estate should be sold to pay the bequests to the different orphan asylums. At the hearing upon this petition the court declined to pass upon many of the questions presented therein, for the reason that the proper time for acting thereon would be upon an application for distribution,

and limited its judgment to determining the property which Mrs. Kinsey was entitled to receive under the third clause of the will. From this judgment an appeal was taken, and is now pending in this court.

It is now urged by the appellant that by this proceeding the executor cast doubts upon his power to sell any portion of the estate of the testator, and rendered the title to the lands sold by him uncertain, and, therefore, that the purchaser ought not to be compelled to take the same, and that the court should not have made a confirmation of the sale. The judgment of the court upon that petition was, however, limited to the land described in the third clause of the will, and does not affect the land sold to the appellant herein. The question of the power of the executor to sell any property of the decedent was not involved in the proceedings before the court, nor does this power appear to have been questioned, either by himself or by any of the respondents to the petition, and it is not alluded to in the judgment. The executor did, it is true, ask the court to determine what property should be sold to pay the bequests to the several orphan asylums, but the court did not in its judgment give to him any direction, acting doubtless upon the theory that, as the discretion upon this subject had been already conferred upon him by the testator, it was not proper for the court to interfere in the absence of any objection by interested parties that such discretion was not being properly exercised. It may have been prudent for the executor to seek in advance instruction upon his duties in these respects, but the court was at liberty to give it or not, and the exercise of its discretion in declining to give it, is not subject to review or comment.

4. It is objected that, inasmuch as the testator's bequest to charitable purposes is in excess of one third of his estate, he died intestate as to such excess, and therefore the power of sale in the will cannot be executed. The power of sale conferred by the will does not depend for the validity of its execution upon a valid disposition of the proceeds of the sale. The power of converting the estate into money depends upon the will of the testator, and may be conferred without any limitation, while the power of disposing of his estate is limited by a statutory

provision. In the present case there is no specific property given to the orphan asylums, nor is there any specific property directed to be sold with which to pay the legacies to them, but the testator directs the sale of the entire estate "otherwise" (i. e., if they had survived him) bequeathed to his aunts, and the proceeds of said sale distributed among the different orphan asylums of San Francisco. Neither the statute nor the testator places any limitation upon the exercise of the power of sale over the property, but after that power has been exercised and the estate reduced to money, the statute steps in and prevents the executor from carrying into effect the further direction in the will that these proceeds shall be distributed to the orphan asylums. The provisions of section 1313 of the Civil Code only make void "dispositions" of property made contrary thereto, but do not affect any other disposition of the property contained in the will, or impair a power of sale given by the will for converting the entire estate into money. The "disposition" of the property, which the testator made in directing it to be sold at public auction, does not contravene this section, but only the distribution of the proceeds of the sale is contrary thereto. A testator may confer upon his executor the power to sell all his estate and divide the proceeds among his heirs-at-law, or he may confer such power and distribute the proceeds according to his will, except as prevented by the statute. The heirs-at-law are not entitled to receive the estate in specie, since the act of the executor in selling the same is within the express authority conferred upon him by the will. Their rights arise only when an attempt is made to carry out the further provisions of the will in distributing the proceeds of those sales to the orphan asylums. The one third of the estate which may be given to charitable uses is one third of the distributable assets (*Estate of Hinckley,* 58 Cal. 457); and a sale and conversion of the property into money, when the devise is not specific, is a convenient if not a necessary mode of ascertaining the amount of the estate for the purpose of determining the quantity thereof to which the charitable beneficiaries are entitled. Until a sale it cannot be determined what is the amount of the estate. "The valuation of the inventory is not conclusive for any purpose." (*Estate of Hinck-*

*ley*, 58 Cal. 457.) Its value at the date of distribution must be ascertained for the purpose of ascertaining the amount to which the charitable beneficiaries and the heirs-at-law are respectively entitled.

5. It is further contended by the appellants that it is incumbent upon the executor to satisfy the purchaser that the title which his conveyance will transfer will pass all the estate in the property of which the testator was seized at the moment of his death, and inasmuch as there may have been a wife or a pretermitted child, whose interest in the estate would be paramount to the will, and would not pass by the executor's conveyance, the court ought not to have confirmed the sale without requiring the executor to furnish evidence in disproof of their existence.

A sale by an executor under a power in the will is not a judicial sale, nor does the statutory requirement that no title shall pass until the sale be confirmed, give to it the incidents of a judicial sale. A judicial sale is one made under the order of a court having jurisdiction of the subject-matter of the sale, and which it directs to be sold for the purpose of carrying its judgment into effect, or of directing a disposition of its proceeds. (Freeman on Void Judicial Sales, sec. 1.) At such a sale the court is regarded as the vendor, and a purchaser who buys the property at the sale has the right to a conveyance which will vest in him the title to the property sold, and may present in objection to its confirmation any facts which will impair or defeat the title thereby transferred. We refer here to those sales which purport to sell the property itself, and not those in which only the right, title and interest of the parties to the proceeding is sold, as in such cases the purchaser buys at his own risk. The purchaser from an executor at a sale under a power in the will deals with him in making the purchase as he would with any other vendor. He makes the purchase subject to a confirmation by the court, but in all other respects he may incorporate in his contract of purchase the same terms and conditions as he would in dealing with any other agent for the sale of property, and he can repudiate his contract for purchase only for the same reasons as he could in case he had bought from another. The executor is regarded

as the donee of a power (*Conklin* v. *Egerton*, 21 Wend. 436; *Newton* v. *Bronson*, 13 N.Y. 592; 67 Am. Dec. 89), and the sale is treated as if made under a power; and the purchaser is required to examine the sufficiency of this power, as he is that of any other power under which a sale may be made. (*Larco* v. *Casaneuava*, 30 Cal. 561.) In this state it is essential that the will shall have been admitted to probate before the power can have any validity (*Castro* v. *Richardson*, 18 Cal. 478), but in all other respects the contract of purchase and sale between the executor and his vendee is attended with the same incidents, and is to receive the same construction as a similar contract between any other vendor and vendee. Prior to 1861 a sale by an executor under a power in the will was valid without any confirmation by the court. In that year the legislature amended the procedure so as to require that such sales should be confirmed by the probate court, the same as those made under its own order. The confirmation thus required is, however, for the protection of the estate, and for the purpose of determining whether the sale shall be confirmed. The scope of investigation by the court is limited to ascertaining whether the sale was legally made and fairly conducted, and the sum bid not disproportionate to the value of the property sold, and that a sum exceeding such bid, at least, ten per cent exclusive of the expenses of a new sale, cannot be obtained. (Code Civ. Proc., sec. 1554.) If any of these facts exist the court is authorized to vacate the former sale (*Estate of Durham*, 49 Cal. 490); but, unless such facts are shown to the court, the court must make an order confirming the sale. (Sec. 1554.)

In the ordinary contract of purchase and sale there is an implication that the conveyance to be made thereunder will transfer the title to the property, but in the absence of any special agreement upon the subject, it is incumbent upon the vendee to examine the title for himself, and to point out any objections he may have to the title tendered him by the vendor. (*Easton* v. *Montgomery*, 90 Cal. 307.) The title to a piece of real estate frequently depends as much upon the existence of facts outside of the record as it does upon the records and written muniments of title, and the investigation of these facts

is as essential to an examination of the title as is the examination of the records. In the examination of a title to be derived from an executor under a power of sale in the will, it is essential to know whether the testator was married at the time of his death, and, if so, whether the property offered for sale was community property; and also whether the decedent left children surviving him whom he did not mention in his will. These, however, are questions of fact to be determined by the vendee, and, if found to exist, and deemed by him to impair the sufficiency of the title tendered by the vendor under his contract, should be pointed out. In the present case no proof of the existence of these facts was presented, and it is very clear that unless they are shown to exist, the vendee cannot make the possibility of their existence a ground for refusing confirmation of the sale any more than he could make such possibility a ground for resisting an action for specific performance.

The order is affirmed.

Paterson, J., and Fitzgerald, J., concurred.