GOODELL, APPELLANT, *v.* SANFORD ET AL., RESPONDENTS.

(No. 1,922.)

(Submitted June 13, 1904.   Decided July 9, 1904.)

*Executors and Administrators—Sales—Nature—Discretion—Vendor and Purchaser — Objections to Title—Estoppel—Statute of Frauds—Declarations of Trust—By Whom Signed—Limitations—Written Instruments—Accrual of Actions—Set-Off—Date of Credit.*

1.  Under Revised Statutes 1879, p. 233, Section 209, providing that, when authority is given in a will to sell property, the executor may sell without the order of the probate court, but must make a return of such sales as in other cases, and that no title passes until the sale is confirmed by the court, a private sale by an executrix under a power in the will to manage the estate as she should deem best, and for that purpose to sell any portion or the whole thereof, which is afterwards confirmed by the court, is not a judicial sale, but a sale under the power.
2.  A will authorizing the executrix to manage the estate as she should deem best, and to sell any portion or the whole thereof, and to invest the proceeds as she should deem fit, empowered the executrix to convey real property to a trustee, who was to hold for a syndicate, which was to plat the same, and under the terms of which sale the purchase price, secured by a lien on the property, was made payable in installments.   ·
3.  In the ordinary contract of purchase and sale there is an implication that the conveyance to be made thereunder will transfer the title to the property, but, in the absence of any special agreement, it is incumbent upon the vendee to examine the title for himself, and to point out any objections he may have to the title tendered him by the vendor.
4.  Beneficiary vendees under a trust agreement, who assented thereto for years, entered into possession, sold portions of the property, made payments on the price, and in all respects ratified the transaction between the purchasing syndicate, of which they were members, and the vendor, until sued for the balance of the price, were estopped from claiming that they received no title to the property, or that the sale, which was one by an executrix under a power, was irregularly made. .

5. Under Compiled Statutes 1887, p. 651, Section 217, providing that no trust or power concerning lands shall be created or declared, unless by act of law or by deed or conveyance in writing subscribed by the party creating or declaring the same, and Section 219 (page 652), providing that contracts for the sale of lands shall be void unless some note or memorandum expressing the consideration be made in writing and subscribed by the party to whom the sale is to be made, where a trust in land was declared on behalf of the members of a syndicate by the grantee of the land to secure the payment of the price to the grantor, such grantee, in signing the declaration, acted as the agent of the parties to the syndicate, and they were bound by the declaration, although they did not sign it.

6. Under Compiled Statutes, Section 41, as amended by Session Laws 1889, p. 172, providing that an action on any contract or liability founded upon an instrument in writing shall be commenced within eight years, an action to enforce a liability evidenced by a declaration of trust, in which a complaint was filed within eight years after a certain payment under the declaration became due, was commenced in time.

7. An action on a trust agreement, which authorized the trustee to sell the interest of a defaulting party at public auction and apply the net proceeds of the sale upon the payment of the amount due from such defaulting party to plaintiff, and giving plaintiff an action against such defaulting party for the balance remaining due after such application, accrued when the trustee sold the property under the terms of the declaration of trust.

8. A setoff, made up of different items, should be credited as of the dates of the respective items.

*Appeal from District Court, Lewis and Clarke County; J. M. Clements, Judge.*

ACTION by Catherine M. Goodell, administratrix of Dwight T. Goodell, deceased, against John B. Sanford and C. G. Evans. From a judgment for defendants, plaintiff appeals. Reversed.

*Messrs. McConnell & McConnell,* and *Mr. Lewis Penwell,* for Appellant.

*Mr. Massena Bullard,* for Respondents.

MR. COMMISSIONER CALLAWAY prepared the following opinion for the court:

The plaintiff brought this action as executrix of the last will and testament of Dwight T. Goodell, deceased. Trial was to the court, which entered judgment for the defendants. The plaintiff has appealed. The questions presented arise upon the judgment roll, which includes a bill of exceptions containing so

much of the evidence as is necessary to elucidate the issues involved. The facts, in so far as they are necessary to a determination of the appeal, are substantially as follows:

The testator died December 31, 1888, leaving a will dated September 18, 1882, in which he appointed the plaintiff sole executrix. Paragraph "fourthly" therein reads: "I hereby authorize and empower my executrix, hereinafter named, to manage my said estate as in her judgment she shall deem best, and for that purpose to sell any portion or the whole thereof, whether real, or personal, or mixed, and to invest or use the proceeds thereof as she shall deem fit and proper, and no liability shall attach to her in any event for the exercise of the discretion here authorized." The will was admitted to probate, and letters testamentary thereupon were issued to plaintiff, prior to the occurrences hereinafter mentioned.

On May 28, 1889, the plaintiff, as executrix, sold at private sale certain real estate belonging to the estate to a syndicate, composed of the defendants (who acted throughout the transaction as the firm of Sanford & Evans) and eleven other persons, for $50,000. The agreement seems to have been that the syndicate should pay one-fourth of the purchase price in cash, and the remainder in three equal installments, falling due June 12, 1890, June 12, 1891, and June 12, 1892.

On May 29, 1889, the plaintiff filed in the probate court a petition praying for the confirmation of the sale, in which she recited "that under and by virtue of said will power is given to your petitioner to sell all or any part of the real estate, hereinafter described, belonging to said estate, whenever and as to your petitioner may seem best and most to the interest of said estate," and also "that in pursuance of the power in said will contained, and deeming it for the best interest of the estate, your petitioner has sold the said premises at private sale, without notice, to George H. Hill, trustee, for the sum of fifty thousand dollars ($50,000.00); that said sum was duly and legally paid, and, as your petitioner believes, the amount for which the same

has been sold is not disproportionate to the value of.the property sold; and that a sum exceeding ten per cent of the purchase price in advance thereof, and excluding the expenses of a new sale, cannot be obtained for said property." Forthwith, upon the filing of the petition, the court made an order fixing June 10, 1889, as the time for hearing the petition. On June 11, 1889, there was also filed a written consent to the sale, signed by the heirs, in which they set forth that, whereas, the will provides, among other things, that the executrix, Catherine M. Goodell, might, "if she felt so disposed, at any time sell and dispose of any or all of the real estate hereinafter described for cash in hand, and invest the proceeds from such sale or sales as she thought best for the interest of the heirs of said estate; and, whereas, the said executrix is offered the sum of fifty thousand dollars for such realty, and upon the following terms and conditions, to-wit: Ten thousand dollars cash down upon delivering the deed to said property hereinafter described, and the further sum of forty thousand dollars to be paid in installments, to be secured by mortgage upon said property—and being desirous of disposing of said property," they therefore urgently requested the court to confirm the sale. Thereupon the court made an order confirming the sale, in which it is recited that, the executrix having made a return of her proceedings under the provisions of the last will and testament of the decedent, "and the court having examined said return and heard the testimony of witnesses in support thereof, and it duly appearing to the court that in pursuance of said power of sale said Catherine M. Goodell sold the following described property, * * * that at such sale George H. Hill, trustee, became the purchaser of said real estate above described for the sum of fifty thousand dollars ($50,000.00), being the highest and best bidder, and the sum being the highest and best sum for said property, * * * it is by the court ordered, adjudged and decreed that the said sale be, and the same is hereby, confirmed and approved, and declared valid, and that proper and legal conveyances of

said real estate are hereby directed to be executed to said purchaser by said Catherine M. Goodell, executrix."

On the next day, June 12th, the plaintiff executed a deed to George H. Hill, trustee, whereby she conveyed to him "all the right, title, interest and estate of said Dwight T. Goodell, deceased, at the time of his death, and also all the right, title and interest that the said estate, by operation of the law or otherwise, may have acquired, other than, or in addition to, that of said testator, at the time of his death, and all dower and right of dower of the said party of the first part, as the widow of said deceased or otherwise, in and to" the real estate in question.

During the month of June, 1889, all the members of the syndicate and Mrs. Goodell signed an instrument reciting the fact that on June 12, 1889, plaintiff had executed the said deed to George H. Hill, trustee, and directing Hill to convey the property to George B. Child, trustee. The signature of Sanford & Evans was written thereto by the defendant Sanford. Hill did as directed; his deed to Child, trustee, being dated August 5, 1889. On Spetember 7, 1889, Child executed a declaration of trust, in which he acknowledged that the property was conveyed to him as trustee for the syndicate. The instrument sets forth the respective interests and liabilities of the several members of the syndicate therein, among which is found the following: "The said Messrs. Sanford & Evans own an undivided two-twentieths interest in the said property, and is indebted thereon to the said Catherine M. Goodell in the sum of three thousand seven hundred and fifty dollars ($3,750.00)." The instrument then provides "that the said Catherine M. Goodell has a lien upon said property to secure the payment" of the sums due her according to the terms set forth therein. The three remaining payments are provided for as above stated, with interest payable annually. It is then certified that the trustee is to hold "the legal title in said premises for the said owners thereof, in the proportions or shares above specified, subject to the lien of the said Catherine M. Goodell, as aforesaid"; that

he is to plat the premises mentioned in the deed as a townsite, to sell the same, to execute deeds to the purchasers, to collect the money therefor, and out of the proceeds to first pay Catherine M. Goodell the amount due her, together with the interest thereon; and "if any payments to be made to the said Catherine M. Goodell as hereinbefore provided shall not be made within the respective times in that behalf above specified, either from the sales of property or from other sources, then and in such event the party failing to make such payment shall be deemed and held to forfeit all right, interest and estate of, in and to the said described property, and the undersigned shall thereupon reconvey to the said Catherine M. Goodell all of the interest in said property owned by the party making such default, and in such event the payments that may have been made by such defaulting party shall be forfeited to the said Catherine M. Goodell and retained by her as fixed, settled and liquidated damages, or, at the option of the said Catherine M. Goodell, the undersigned, instead of so reconveying such interest to her, shall sell the interest of said defaulting party at public auction to the highest bidder, and apply the net proceeds of such sale upon the payment of the amount due from such defaulting party, and the said Catherine M. Goodell shall have her action against such defaulting party for the balance remaining due from such defaulting party after making such application of payment. Said Catherine M. Goodell shall make her election under such option by giving notice to said defaulting party, which notice shall specify the course she elects to pursue, and if, within ninety days after receiving such notice, such defaulting party shall have failed to pay the full amount, principal and interest, then remaining due upon said indebtedness, the right of the said Catherine M. Goodell to demand a reconveyance or a sale of said property in the manner hereinbefore specified, in pursuance of her election, shall be absolute, and the undersigned shall proceed to reconvey or sell, as the case may be, upon the demand of said Catherine M. Goodell." To this declaration there was annexed a bond, which was given by Child to Mrs. Goodell in the

sum of $20,000, with Erastus D. Edgerton and John B. Sanford as sureties. The bond recites the execution of the declaration, naming specifically Sanford & Evans, as well as other members of the syndicate, and was conditioned to the effect that the trustee should "well, truly and faithfully execute and perform all duties as such trustee." This declaration of trust and bond appear of record in Book 12, at page 41, in the office of the county clerk of Lewis and Clarke county.

Child continued to act as trustee for nearly six years. On April 25, 1896, the members of the syndicate, by an instrument in writing signed by them, requested Child, who had removed from Montana, to convey the property remaining in his hands to George F. Cope, trustee. The written request begins: "We, the undersigned, members of the syndicate named in a certain 'declaration of trust,' wherein George B. Child is trustee, said declaration of trust being of record in the office of the county recorder at Helena, Lewis and Clarke county, Montana, in Book 15, at page 41, to which reference is hereby made." The signature of Sanford & Evans to this paper the defendants admit to be genuine. In pursuance of this request Child, on July 31, 1896, conveyed the property to Cope, trustee. In this deed it appears that a considerable portion of the property conveyed to Child, trustee, in the year 1889, was thereafter sold, during the years 1889, 1890, 1891 and 1892, as parts of the "Hotel Park Addition." The sales of lots were made by the firm of Porter, Muth & Cox, which firm was a member of the syndicate; the proceeds being turned over to the trustee, Child. On July 14, 1898, the defendants were notified by plaintiff, through her attorney, that on November 16, 1894, they were indebted to plaintiff in the sum of $1,666.53 on account of the purchase price of the property. The defendants did not deny but that the statement was correct, and did not give any testimony tending to show that they had paid any portion of said amount. They say they sold Mrs. Goodell goods, wares and merchandise aggregating $156.41 during a period beginning May 1, 1894, and ending October 16, 1898, but say these sales did not apply upon the real

estate purchase, but, on the contrary, Mrs. Goodell still owes them for the goods, etc.

On December 16, 1898, the plaintiff notified the defendants that, as they had failed to comply with the terms of the declaration of trust, she elected to direct the trustee to sell their interest in the property at public auction to the highest bidder, and apply the net proceeds of the sale to the payment due from them; that, if there remained a balance due her after applying the amount obtained from the sale, she would commence an action against them for such balance. They were given ninety days to make the payment, according to the terms of the declaration of trust. To this notice the defendants paid no attention. Thereupon the trustee, in pursuance of his duty, sold the defendants' interest in the property at public auction. The sum of $50 was realized therefrom, and the net proceeds thereof were applied upon the indebtedness. Thereupon this action resulted. The plaintiff asks judgment for $1,575.83 and interest thereon at the rate of 8 per cent per annum from November 11, 1895, and for costs of suit. The transcript does not show when this action was begun, but the second amended complaint was filed April 16, 1900.

The defendants contend that, because of irregularities in the proceedings, there was no conveyance of title to them, and therefore there was no consideration for the transaction; consequently that no liability attaches to them; that the property was not sold to them, but was sold to Hill, trustee; that plaintiff never made a return of sale to defendants; that the court never confirmed any such sale as that alleged in the complaint; that the sale did not authorize the creation of a trust by the executrix. The most of these objections are purely technical.

In the first place, defendants err in assuming that the sale was a judicial one. It was not. It was a sale under the authority granted to plaintiff in the will. (*In re Pearsons,* 98 Cal. 603, 33 Pac. 451; *Id.,* 102 Cal. 569, 36 Pac. 934.)

Section 209, p. 233, Revised Statutes, 1879, which was in

force when the will was drawn, and presumably was in contemplation of the testator, provides : "When property is directed by the will to be sold, or authority is given in the will to sell property, the executor may sell any property of the estate without the order of the probate court, and at either public or private sale, and with or without notice, as the executor may determine; but the executor must make return of such sales as in other cases, and if directions are given in the will as to the mode of selling, or the particular property to be sold, such directions must be observed. In either case no title passes unless the sale is confirmed by the court." The same section was re-enacted in the Compiled Statutes (Section 209, p. 328), which were in force when the sale herein referred to was made.

*In re Pearsons,* 98 Cal. 603, 33 Pac. 451, the court said: "A sale by an executor under a power in the will is not a judicial sale, nor does the statutory requirement that no title shall pass until the sale be confirmed give to it the incidents of a judicial sale. * * * The purchaser from an executor at a sale under a power in the will deals with him in making the purchase as he would with any other vendor. He makes the purchase subject to a confirmation by the court, but in all other respects he may incorporate in his contract of purchase the same terms and conditions as he would in dealing with any other agent for the sale of property, and he can repudiate his contract of purchase only for the same reasons as he could in case he had bought from another. The executor is regarded as the donee of a power (*Conklin* v. *Egerton,* 21 Wend. 436; *Newton* v. *Bronson,* 13 N. Y. 592, 67 Am. Dec. 89), and the sale is treated as if made under a power; and the purchaser is required to examine the sufficiency of this power, as he is that of any other power under which a sale may be made (*Larco* v. *Casaneuva,* 30 Cal. 561). In this state it is essential that the will shall have been admitted to probate before the power can have any validity (*Castro* v. *Richardson,* 18 Cal. 478), but in all other respects the contract of purchase and sale between the executor and his vendee is attended with the same incidents, and is to receive the same con-

struction as a similar contract between any other vendor and vendee."

In confirming a sale so made, "the scope of investigation by the court is limited to ascertaining whether the sale was legally made and fairly conducted, and the sum bid not disproportionate to the value of the property sold, and that a sum exceeding such bid at least ten per cent, exclusive of the expenses of a new sale, cannot be obtained." (Sections 2685, 2687, Code of Civil Procedure.) The court heard the proof adduced upon the return of plaintiff and confirmed the sale. It doubtless inquired into the terms thereof, and was satisfied that the sale was legally made and fairly conducted, the sum bid not disproportionate to the value of the property sold, and that a sum exceeding the bid as the statute requires could not be obtained. The sale as actually concluded was not the precise sale to which the heirs consented; but it was equally as advantageous to the estate, if not more so, and it complied substantially with the sale to which the heirs consented. The plaintiff reserved a lien upon the land sold, with a right to have the same reconveyed to her, retaining all payments theretofore made by the syndicate, or to have the interests of the vendees sold at public auction, with a right to sue them for the deficiency. The heirs have never objected to the proceeding so far as the record discloses, nor has any creditor. What effect the consent of the heirs had, or could have had, upon the court's action, is not perceptible, except that the court was thereby informed that the sale was not for cash, but was upon a partial payment, with the remaining payments secured.

The plaintiff had the right to make the sale in the manner she did under the terms of the will. A correct construction of paragraph "fourthly" therein leaves no doubt that a very wide discretion was left to plaintiff, and she does not appear to have transgressed it. (See *Huger* v. *Huger,* 9 Rich. Eq. 217; *Wright* v. *Zeigler,* 1 Ga. 324, 44 Am. Dec. 656; *Munson* v. *Cole,* 98 Ind. 502.)

No warranty of title was made by the plaintiff. "In the ordinary contract of purchase and sale there is an implication that the conveyance to be made thereunder will transfer the title to the property; but, in the absence of any special agreement upon the subject, it is incumbent upon the vendee to examine the title for himself, and to point out any objections he may have to the title tendered him by the vendor. (*Easton* v. *Montgomery,* 90 Cal. 307, 27 Pac. 280, 25 Am. St. Rep. 123.)" (*In re Pearsons, supra.*)

If defendants did not satisfy themselves of the title they were to get, it is their own fault. However, they have not shown us that they did not receive a perfect title, except as incumbered by their own contract. Their trustee entered into the possession of the property, platted a part of it into a townsite, sold portions thereof, and made payments upon the purchase price to plaintiff, all as he was empowered to do by the declaration of trust. Until defendants lost the property by foreclosure sale, all their acts, so far as the record discloses, were in direct affirmation of the trust agreement. The fact that they assented thereto for years, entered into possession of the property, sold portions thereof, made payments on the purchase price, and in all respects ratified the transaction between the syndicate and plaintiff, until sued for the balance of the purchase price due plaintiff, estops them from now saying they received no title, or that the sale was irregularly made. (*Harbin* v. *Levi,* 6 Ala. 399, 8 Smith's Con. Rep. 486; *Martin's Executor* v. *Truss,* 50 Ala. 95; *Adair* v. *Adair,* 78 Mo. 630; *Crumb* v. *Wright,* 97 Mo. 13, 10 S. W. 74; *Dupleix* v. *Deblieux,* 26 La. Ann. 218; *Lacy* v. *Johnson,* 58 Wis. 414, 17 N. W. 246; *Spinning* v. *Drake,* 4 Wash. 285, 30 Pac. 82, 31 Pac. 319; *Robertson* v. *Pickrell,* 109 U. S. 608, 3 Sup. Ct. 407, 27 L. Ed. 1049.)

The evidence discloses clearly that the syndicate first designated Hill as trustee, and the deed was made to him by plaintiff in accordance with direction of the members of the syndicate. Hill was connected with the First National Bank, and presum-

ably would keep the syndicate's money there. Edgerton, a member of the syndicate, was connected with the Second National Bank, and wanted the deposits. Through his influence Hill, trustee, was requested to convey the property to Child, trustee, and did so. Child executed the declaration of trust. This declaration was drawn by F. P. Sterling, Esq., attorney for the plaintiff. He testified that "there was a declaration of trust drawn, and it was entered into by all the parties interested." There seems to have been some difficulty in agreeing upon its exact terms. Sterling wrote and rewrote it seven or eight times, before it was finally agreed upon. To this declaration was attached the bond, conditioned for the trustee's faithful performance of his duties, and, as before stated, it was signed by Sanford, one of the defendants, as surety.

From the competent testimony in the record it is quite impossible to say that the defendants were not fully apprised, both in fact and in law, of the terms of the declaration of trust. Are they bound by its terms? When it was executed the Compiled Statutes of 1887 were in force. Section 217, p. 651, thereof, reads: "No estate or interest in lands other than for leases for a term not exceeding one year, or any trust or power over or concerning lands or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared unless by act or operation of law, or by deed or conveyance in writing subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent thereunto authorized by writing." Section 219, p. 652, thereof, reads: "Every contract for the leasing for a longer term than one year, or for the sale of any lands, or interest in lands, shall be void, unless the contract, or some note or memorandum thereof expressing the consideration, be in writing, and be subscribed by the party by whom the lease or sale is to be made." The land was conveyed to Child, trustee, by direction of all parties interested. Hill was a mere intermediary. Child executed the declaration as the grantee of plaintiff. In so doing he was the agent of all parties to the syndicate. He was the proper person

to make the declaration. To be charged by it, it was not necessary that the defendants should sign it. "When the trust is not created in and by the instrument of conveyance, it may be sufficiently declared and evidenced by the trustee to whom the land is conveyed, or who becomes the holder of the legal title; and this may be done by a writing executed simultaneously with or subsequent to the conveyance, and such writing may be of a most informal nature."· (2 Pomeroy's Eq. Jur. Sec. 1007.)

A case much in point is that of *Lowber* v. *Connit*, 36 Wis. 182, in which it was claimed by counsel for defendant that a contract for the sale and conveyance of real estate was not binding upon defendant, because he did not sign it. The court said: "This question is practically decided adversely to this view in *Vilas* v. *Dickinson*, 13 Wis. 488. That was an action upon a bond for the conveyance of real estate, brought by the obligor against the obligee to recover a portion of the purchase money. The objection was taken that the obligation was signed by the plaintiff only, and therefore was not· binding upon the other party. But the objection was overruled, the court holding that a party who accepts and adopts a written contract, although it is not signed by him, is bound by its terms and conditions. But it is insisted that under the statute of frauds the defendant is protected, because he did not sign the instrument upon which the action is founded, and which creates an estate in lands. Our statute in substance enacts that any contract for the sale of lands or of any interest therein shall be void unless the contract, or some note or memorandum thereof expressing the consideration, be in writing, *and be subscribed by the party by whom the sale is made*. Section 8, c. 106, Rev. St. The distinction between this provision and the English statute, which requires the contract to be *signed by the party to be charged*, is pointed out by the chief justice in *Dodge* v. *Hopkins*, 14 Wis. 631, 641, 648, and need not be· dwelt upon here. See, also, *Hodson* v. *Carter*, 3 Chand. 234. The signature of the party who makes the sale satisfies this provision of the statute. But then the question arises whether the· contract signed and delivered by the plain-

tiffs, and accepted and adopted by the defendant as the agree-
ment between them, binds the latter. This can hardly be said
to be an open question, certainly not after the rule laid down in
*Vilas* v. *Dickinson,* which was an action at law." Further on
the court said: "But it seems that the real foundation of the
rule is that the party who accepts and adopts a written contract,
though not signed by him, should be deemed to have fully con-
sented to its terms and conditions, and is therefore bound by
them. He ought not to be in a position where he can hold the
other party to the contract, and compel its performance, if ad-
vantageous to him, and at the same time be at liberty to avoid
the contract on his part, if disadvantageous. Both parties ought
to be bound by the contract, or neither should be bound. And
where the contract has been accepted and adopted by the party
not signing it, he does assent and agree to it on his part, and
the law implies a promise to perform." (And see *Ide* v. *Leiser,*
10 Mont. 5, 24 Pac. 695, 24 Am. St. Rep. 17.)

From what has been said, it follows that defendants were
and are bound by the terms of a written instrument—the decla-
ration of trust—to which they assented, and under which they
acted for many years, and which they never sought to repudiate
until the commencement of this action. This being true, the
defendants' plea that the plaintiff's action is barred by the stat-
ute of limitations cannot be sustained. By Section 41 of the
First Division of the Compiled Statutes of 1887, as amended
(Session Laws of 1889, p. 172), which was in force when the
declaration of trust was executed, it was provided that an action
upon any contract, obligation or liability founded upon an in-
strument in writing shall be commenced within eight years.
Section 512 of the Code of Civil Procedure is to the same effect.
As before stated, the record does not disclose when this action
was commenced, but the second amended complaint was filed
within eight years after the payment of June 12, 1892, became
due.

But, irrespective of the eight-year limtiation, under the facts
in this case, we think plaintiff's right of action against the de-

fendants accrued when the trustee sold the property under the terms of the declaration of trust. The sum for which plaintiff should have judgment is therefore but a mere matter of computation for the lower court. Plaintiff concedes that defendants are entitled to a setoff amounting to $156.41. This latter sum is made up of several different items, which should be credited to defendants as of their respective dates.

We are of the opinion that the judgment and order should be reversed, and the cause remanded for further proceedings in conformity with this opinion.

PER CURIAM.—For the reasons stated in the foregoing opinion, the judgment and order are reversed, and the cause is remanded for further proceedings in conformity therewith.

MR. JUSTICE MILBURN, not having heard the argument, takes no part in this decision.