LACY vs. JOHNSON.

*October 5 — October 23, 1883.*

VENDOR AND VENDEE. TAX DEED. *(1) When vendee cannot dispute vendor's title. (2) When vendee liable for conversion. (3) Evidence of vendor's title. (4) Vendee of growing timber cannot take tax deed of the land as against his vendor. (5) Grantee in tax deed cannot sue for possession of timber cut before the deed.*

1. One who enters upon land and removes growing timber therefrom in pursuance of a contract for the purchase thereof, cannot dispute the title of his vendor or refuse to pay the contract price, unless he has been ousted from-the possession or been compelled to pay the value of the timber by one having a paramount title.

2. Where a contract for the sale of growing timber provided that the title should remain in the vendor until payment was made, and the vendee, before payment, converted the timber to his own use, the vendor may maintain an action for such conversion and recover as damages the purchase price.

3. In such action the title of the vendor is sufficiently shown by the production of the written contract of sale.

4. One who, after having cut and removed growing timber under a contract for the purchase thereof, purchases tax certificates and obtains thereon a tax deed of the land, cannot set up such deed as a defense to an action by the vendor for the price or for the conversion of the timber. Such deed does not in any way affect

the title of the vendor to the timber cut and removed before it
was issued.

5. A tax-title claimant cannot, under sec. 3177, R. S., maintain an ac-
tion to recover the *possession* of timber cut upon the land before
the issuance of the tax deed.

APPEAL from the Circuit Court for *St. Croix* County.

The action is for the conversion of a quantity of pine logs
cut by the defendant under contract with the plaintiff. The
facts are sufficiently stated in the opinion. The defendant
appealed from a judgment upon a verdict directed for the
plaintiff.

For the appellant there was a brief by *C. P. Gregory* and
*Marsh & Searles*, and oral argument by *Mr. Marsh*.

1. The defendant had a legal right to purchase any out-
standing title or lien and to protect himself from an action
for waste by the holder of the tax liens. Those liens were
a breach of plaintiff's implied warranty of title; and the
title by tax deed relates back to the tax sale, which was be-
fore the timber was cut. R. S., sec. 3177; *Wright v. Wing*,
18 Wis., 45; *Lain v. Shepardson*, 23 id., 224; Blackwell on
Tax Titles (4th ed.), 428–433 (384–391); *Stebbins v. Guthrie*,
4 Kan., 353; 3 Washb. on R. P. (3d ed.), 276–7. 2. The
title to a large part of the land was not in the plaintiff.
Counsel also discussed at length the objections to evidence,
which the opinion holds to be immaterial.

For the respondent there was a brief by *N. H. Clapp* and
*O'Brien & Wilson*, and oral argument by *Mr. Clapp*.

The appellant could not take and rely upon a tax deed as
against the respondent. 1. He is estopped to deny his
vendor's title. *Whiteside v. Jackson*, 1 Wend., 418; *Jackson
v. Reynolds*, 1 Caines, 444; *Jackson v. Stewart*, 6 Johns., 34;
*Thredgill v. Pintard*, 12 How., 24, 29, 30; *Stott v. Ruther-
ford*, 92 U. S., 107; *Crossley v. Dixon*, 10 H. L. Cas., 304;
*Kinsman v. Parkhurst*, 18 How., 289; *Miller v. Larson*,
17 Wis., 624; *Schumaker v. Hoeveler*, 22 id., 43; *Hurd v.

*Hall*, 12 id., 112, 137-8; *Bailey v. Scott*, 13 id., 618.   2. This principle applies to acquiring an adverse title originating after the contract, as well as to an elder title.   *Quinn v. Quinn*, 27 Wis., 168; *Melia v. Simmons*, 45 id., 338.   The parties stand to each other as equitable mortgagor and mortgagee.   *Martin v. Scofield*, 41 Wis., 167; *Northrup v. Trask*, 39 id., 515.   Counsel also discussed the objections to evidence.

TAYLOR, J.   The plaintiff brought his action against the defendant for the value of certain pine logs which he claimed to own, and which he alleges were at divers times taken and converted by the defendant.   The defendant, after pleading a partial general denial, admits that as to the logs claimed by the plaintiff to have been taken and converted in the years 1876 and 1877, he took and converted the same, but alleges that he did so under and by virtue of the provisions of a contract entered into between the plaintiff and himself, and which was made a part of his answer, and is set out below, and that he had paid the plaintiff the full amount due him under said contract for the logs so taken and converted.   As to the logs alleged to have been converted in 1878, 1879, and 1880, he admits that he took and converted 1,015,676 feet, which were cut and taken from the lands described in said contract, but he denies the right of the plaintiff to recover anything for said logs for the following reasons set out in his answer, viz.:

" That before said logs were so cut, and upon the dates hereinafter mentioned, said lands and all of the same — the taxes assessed thereon at said time having been returned as delinquent, and remaining unpaid — were, each and all of the same, on the 8th day of May, A. D. 1877, by the proper officer of said county of Polk, to wit, the treasurer of said county, duly sold for the nonpayment of the taxes assessed thereon; that said lands, after having been duly offered for

Lacy vs. Johnson.

sale and re-offered, the said county treasurer did bid off the same, for the said county of Polk, for the sum of thirty-six and 12-100 dollars; that thereupon the said county treasurer did give to the purchaser, to wit, the said county of Polk, a certificate dated the day of sale, to wit, on the 8th of May, 1877, describing the lands purchased (said description being the lands hereinbefore described), the amount paid therefor, and for which the said lands were sold, and the time when the purchaser would be entitled to a deed, the amount paid therefor being the sum of thirty-six and 12-100 dollars, and the time when the purchaser would be entitled to a deed being stated as three years from the date thereof, unless said lands were sooner redeemed from such sale, according to law; that thereupon and thereafter, and after the said logs had been cut and removed from said lands, said certificate was duly assigned to the purchaser by the county clerk writing his name on the back thereof, with his official character added, and the same was then delivered to this defendant, who paid to said Polk county the sum of thirty-six and 12-100 dollars.

"That thereafter, and on the 14th day of May, A. D. 1880, this defendant duly presented said certificate to the proper officer, to wit, Iver Michaelson, county clerk of said Polk county, and thereupon a tax deed of said land was duly issued to this defendant on the day last aforesaid, a copy of which said deed is hereunto attached, marked Exhibit B, and made a part hereof.

"That by reason of the facts hereinbefore stated, the defendant became the owner of said land in said deed described; ever since the issue thereof has been and now is such owner; that by reason of said facts the said defendant became and was the owner of all the timber standing, being, or growing upon said land, and all the same, from and after the time from which the tax for which said land was sold became delinquent, which was the 8th day of May, 1877,

from and since which time the said defendant has been such owner thereof."

Upon motion of the plaintiff that part of the defendant's answer above cited was stricken therefrom as not constituting any defense to plaintiff's cause of action, and was, therefore, irrelevant and redundant. This ruling of the court was duly excepted to by the defendant, and, in our view of the questions raised upon this appeal, it is the material question in the case. If the facts above stated do not constitute a defense, then the defendant had no defense to the action, and judgment must necessarily go against him for some amount.

The following is a copy of the contract between the parties, and under and by virtue of which the defendant entered upon the lands described therein, and cut and removed therefrom, and afterwards converted to his own use, the logs in question:

"Articles of agreement made and entered into this 17th day of October, A. D. 1875, by and between *P. B. Lacy*, of St. Croix county, state of Wisconsin, party of the first part, and *Abram Johnson*, of Washington county, state of Minnesota, party of the second part:

"Witnesseth, that the said party of the first part, for and in consideration of the premises, stipulations, and agreements hereinafter contained, to be performed on the part of the said party of the second part, does hereby grant unto the said party of the second part, his executors, administrators, and assigns, the right, privilege, and permission to enter and cut, during the logging seasons of 1875 and 1876, 1876 and 1877, and 1877 and 1878, all of the pine timber fit for saw-logs growing upon the following-described lands situated in the county of Polk, state of Wisconsin, to wit: In the season of 1875 and 1876, 500,000 feet or more off of W. ½ of N. W. ¼, S. E. ¼ of S. W. ¼, and W. ½ of S. E. ¼, sec. 26, T. 36, R. 17; and in logging season of 1876 and 1877, the balance of the

Lacy vs. Johnson.

timber that shall remain on the above described land; and in logging season of 1877 and 1878, the timber on the N. E. ¼ of N. E. ¼ of sec. 26, N. ½ of N. W ¼ sec. 25, N. W. ¼ of N. E. ¼ sec. 25, S. E. ¼ of S. E. ¼ sec. 15, S. ½ of S. W. ¼ and S. ¾ S. E. ¼ sec. 14, and W. ½ S. W. ¼ sec. 13, in town 36, of range 17; and said party of the second part, in consideration of the grant, privilege, and permit aforesaid, does hereby promise and agree, for himself, his executors, administrators, and assigns, that he will enter upon said lands as soon as the regular logging seasons aforesaid shall commence, with a sufficient number of men and teams to enable him to cut and haul all the timber upon said lands suitable for saw-logs, and that will make two logs of not less than twelve feet to the tree, twelve inches in diameter at the top end; and that he will cut the same clean, acre by acre, as he goes, without waste, and as little damage as practicable to the young timber; that he will bank and land said logs separately from all others, and, failing so to do, all other logs banked or landed with them shall be marked with the mark hereinafter stated, and all other lumber mixed or rafted with the lumber manufactured therefrom shall be scaled with it, and all shall be considered and scaled as having been cut upon said land under this contract, and the stumpage shall be estimated accordingly; that he will bank and land said logs in such manner as to afford all reasonable facilities for scaling and driving the same; that he will mark the same in a plain and substantial manner, with the following log-mark, to wit: those cut in season of 1875 and 1876, AXHK; those cut in season of 1876 and 1877, AIHK; and those cut in season 1877 and 1878, AXHKV; which said marks shall be properly recorded in the office of the surveyor general of logs and lumber of first Minnesota, also at the office of the inspector of logs of the fourth Wisconsin, districts, in name of said party of the first part; that on the 1st of July after each season in which logs are cut, said party of the second

part will pay to the said party of the first part, at his office in Hudson, Wisconsin, two and 50-100 dollars, each and every thousand feet by measurement of the entire amount of such logs, and upon such payment, according to the true intent and meaning of these presents, the said logs shall become and be the property of the said party of the second part, and the said mark transferred to him, the said *Abram Johnson:* provided, however, and it is hereby expressly understood and agreed by and between the parties hereto, that until such payment, and until the terms of this contract shall have been fully complied with and performed on the part of the said party of the second part, all the logs which may be cut as aforesaid shall remain the property of the said party of the first part, and interest at the rate of ten per cent. per annum shall be added from said 1st day of July, after said logs are cut, until paid.

"And it is further mutually agreed that in case the said party of the second part shall fail to comply with the terms of this agreement, the said party of the first part shall have the right, and is hereby fully empowered, at his option, at any time to enter upon and take possession of said logs, as well as any lumber manufactured therefrom, wheresoever the same may be, and to sell the same upon such terms as to him or his agent may seem best; and from the proceeds of said sale to retain and keep as stumpage $2.50 per thousand feet, board measure, for all the logs which shall have been cut under this contract, together with the costs and expenses of taking possession, of keeping and selling said logs and lumber, or either, with a reasonable compensation for the time and trouble of himself or his agent in attending thereto, paying the balance, if any, to said party of the second part; that all the logs cut upon said lands, or banked and landed with them, as well as any lumber made therefrom, shall be scaled by William Dwelley, of Hudson, Wisconsin, or his agent, and the scale bill rendered by him shall be final and

conclusive between the parties hereto: provided, that if, from any cause, said party of the first part shall see fit to have a re-scale by said Dwelley or his agent, he shall have the right to cause the same to be made, and the expenses of scaling said logs shall be equally borne by said parties of the first and second part, except that said party of the second part shall, at his own proper cost, board the said scaler and his assistants while engaged in making said scale or survey; that in case of any dispute or disagreement beween said parties in regard to cutting clean, or with proper economy, or without waste or damage to the growing timber, or any or either, the matter of disagreement shall be referred to the said William Dwelley or his agent, whose decision in writing, delivered to the said parties respectively, or their agents, shall be final and conclusive between said parties, and shall be a bar to any further adjudication upon such question or questions; the intention being that all the pine timber suitable for saw-logs upon the land covered by this permit, of the one above specified, shall be cut and hauled by said second party during said logging seasons, as before specified, or if left standing, or cut and not banked, shall be paid for at the same rate and at the same time as those that were cut and hauled.

"In testimony whereof the said parties of the first and second part have hereunto set their hands in duplicate the day and year first above written, in presence of J. D. McComb.                                        P. B. Lacy,

"Abe Johnson."

Upon the trial of the action the plaintiff undertook to prove his title to the lands in question by showing a chain of conveyances from the government to himself, and many of the objections and exceptions in the case are made and taken to this kind of evidence offered by the plaintiff and received by the court, all of which we deem entirely irrelevant and immaterial, because the case clearly shows that the

defendant entered upon the lands, and cut and removed all the logs and timber in question, under and in pursuance of the authority given to him by said contract. He makes no claim that the plaintiff had no title to the lands in question, except the claim that, after he had cut and removed therefrom all the logs in question, he procured a tax deed to be executed and delivered to himself, upon a sale of such lands for the nonpayment of taxes in 1877, and does not allege in his answer, or attempt to prove on the trial, that his title to the logs under said contract has been controverted or questioned by any one having a title paramount to the plaintiff's title. It is very clear that the contract under which the defendant entered, and cut and removed the timber from the lands in question, was a contract conveying an interest in real estate. *Strasson v. Montgomery*, 32 Wis., 52; *Young v. Lego*, 36 Wis., 394.

The defendant having entered upon the lands in controversy for the purpose of cutting and removing the growing timber therefrom under a contract with the plaintiff which gave him the right to do so, having made such entry under and by virtue of the authority of such contract, and having cut and removed the timber solely under that authority, he is in no position to dispute the title or ownership of the plaintiff, or to refuse to respond to him for the contract price agreed to be paid therefor, unless he can show that some other person has a better title than the plaintiff, and that, by virtue of such better title, he has been ousted from the possession of the timber cut, or been compelled to respond for its value to the person having such better title. This rule has been stated by this court in the following cases: *Taft v. Kessel*, 16 Wis., 273; *Horton v. Arnold*, 18 Wis., 212; *Ludlow v. Gilman*, id., 552; *Mecklem v. Blake*, 22 Wis., 495; *Eaton v. Lyman*, 30 Wis., 41; *McIndoe v. Morman*, 26 Wis., 588; *Oakes v. Estate of Buckley*, 49 Wis., 592–600. These cases all hold that when a grantee or

vendee enters into possession under a deed, or contract for a deed, he cannot defend against the payment of the purchase price while he remains in quiet and peaceable possession under his contract or deed. If his grantor's or vendor's title is defective, he may, in a proper case, elect to rescind the contract; and if he does so, and restores his grantor or vendor to the possession of what he has obtained under his contract, he may avoid the same.

It follows from these decisions that the defendant in the case at bar having obtained the possession of the timber in question under a contract of purchase from the plaintiff, he cannot remain in possession, or sell and convert the same to his own use, and then refuse to pay the purchase price according to the contract. In such case the plaintiff's title is sufficiently shown by the production of the contract under which the defendant acted, in order to entitle him to recover the price agreed upon. Although in this case the plaintiff proceeded for the conversion of the logs cut by the defendant, and demanded judgment for the value of the logs irrespective of the contract price, the court below restricted the plaintiff's recovery to the contract price, and interest thereon. The case is not taken out of the rule established by this court merely because the plaintiff brought an action for the conversion of the logs, instead of an action for the purchase price. It will be seen by the terms of the contract that the title to the logs cut was to remain in the plaintiff until paid for, and if the defendant converted them to his own use, without first making such payment, the plaintiff would have a right to maintain an action for the wrongful conversion, and recover as damages his interest in such logs, namely, the purchase price. It is unnecessary, therefore, to consider upon this appeal any of the objections taken to the testimony of the plaintiff in respect to his title.

The only other question in this case necessary to determine is whether the taking of the tax deed by the defendant, as set out in his answer, vested the title to the logs previ-

ously cut and removed under the contract, in the defendant. If we follow the decisions of this court on the subject of tax deeds, it is clear that the relations between the plaintiff and defendant were such, so far at least as the logs cut and removed from the land were concerned, as would prohibit the defendant from acquiring any title to them by such deed as against the plaintiff. Under the decisions above cited, if a third person had taken a tax deed upon the lands in question upon the same certificate upon which the deed to the defendant was issued, and if it be admitted that such third person could, under the provisions of sec. 3177, R. S. 1878, have maintained an action of waste against the defendant, and recovered the value of such logs, still the defendant would have remained liable to the plaintiff for the purchase price of said logs, unless such tax-title owner had taken some steps against the defendant to enforce his right under such deed. And it would seem to be clear that, if the mere taking of the tax deed by a third person would be no defense, the taking of such deed by the defendant himself would not enlarge his rights. The proofs show that he had already converted all, or very nearly all, the logs to his own use, by a sale thereof, before he purchased the tax certificates from the county upon which his deeds were issued, and the only lien the county had on the logs when he converted them to his own use was a lien for the amount due to the county on the certificates. Sec. 1195, R. S. 1878. But there is another insuperable objection to the defense set up by the tax deed, and that is that the relation of vendor and vendee existing between the plaintiff and defendant at the time rendered the defendant incompetent to acquire a title by tax deed which should cut off the rights of the plaintiff. *Quinn v. Quinn*, 27 Wis., 168; *Avery v. Judd*, 21 Wis., 262; *Edgerton v. Schneider*, 26 Wis., 385; *Smith v. Lewis*, 20 Wis., 350; *Sturdevant v. Mather*, id., 576. Either of these objections are fatal to the defense under the tax deed.

The injustice of allowing the defendant to avail himself

Lacy vs. Johnson.

of the tax deed as a defense is manifest. The plaintiff's right of action against him for the value of most if not all the logs converted had accrued before any tax deed was issued, and while the tax certificates were in the hands of the county. If the county had any claim to these logs before a deed was issued, it was, as above stated, only for the amount due on the certificates, and if the defendant had any reason to expect the county would take measures to enforce such lien, he could have defeated it by redeeming from the tax sale. So, if he anticipated that the county, or some other person, would take a tax deed upon such sale and bring an action under sec. 3177, R. S., to recover damages for waste after the deed was issued, that would have been equally prevented by a redemption of the certificates. When, therefore, he purchased the certificates of sale of the county, as between him and the plaintiff it must be treated as a redemption of the same, and the deed issued thereon cannot defeat the plaintiff's title to the logs which had been long before converted by the defendant.

There is another reason why the tax deed to the defendant, taken as this was, cannot operate to affect in any way the plaintiff's title to the logs cut, removed, and sold before it was issued. If the taking of a tax deed by a stranger would have subjected the defendant to an action of waste for cutting and removing the logs, it is very clear that when the tax deed was issued to the defendant himself, he could not maintain an action against the plaintiff for the waste which he had himself committed under the authority of the plaintiff; nor could he, or any third party taking such tax deed, maintain any action to recover the possession of the logs cut and sold after the tax sale, and before the tax deed was in fact issued, under the provisions of sec. 3177, R. S. The remedy given by that section is purely statutory, so far at least as tax claimants are concerned, and the only remedy given is an action of waste to recover damages; clearly

recognizing that the title to the timber cut and removed from the lands before the tax deed was issued, would remain in the person who cut and removed the same, or, if sold by him, in his vendee, and would not become vested in the holder of the tax deed. *Northrup v. Trask,* 39 Wis., 515.

In any view of the case, the tax deed did not vest any title to the logs and timber cut and removed from the premises before the deed issued in the grantee named therein, and so could not make any foundation for the claim that the defendant ought not to pay for the logs because his title to them had failed.

There is no doubt that the plaintiff was entitled to a verdict for the value of the logs converted by the defendant at the price of $2.50 per thousand feet, with interest from the time of conversion, and we do not understand that there is any objection to the amount of the verdict directed to be found in favor of the plaintiff, unless, as the defendant claims, his tax deed was a defense to the plaintiff's right of action as to the logs cut and removed in the years 1878 and 1879. That being no defense, the verdict was properly directed by the court.

*By the Court.*— The judgment of the circuit court is affirmed.