Keystone Lumber Co. vs. Kolman.

KEYSTONE LUMBER COMPANY, Appellant, vs. KOLMAN, Respondent.

*November 7 — November 26, 1896.*

94  465
103  302

94        465
s34 LRA  821
51 LRA 622n

*Sale of standing timber: License to cut and remove: Title: Right of licensee to maintain replevin to recover timber wrongfully cut by third person: Ratification of wrongful act: Reimbursement: Practice.*

1. A written instrument by which, for a sufficient consideration, the owner of land bargained, sold, granted, and conveyed to a lumber company and its assigns the right to cut and remove for its own use during the period of twenty years all the pine timber standing and being on certain lands, was a mere license and did not vest title to the timber in the licensee.

2. Where the timber covered by such a license is wrongfully cut by a trespasser while the license remains unrevoked, the licensee may, after the severance, adopt the acts of the wrongdoer as his own and assume possession of the timber; but if he adopts the benefits of the wrongful act he must also reimburse to the wrongdoer what the latter has reasonably expended in his service. *Gillett v. Treganza*, 6 Wis. 343, distinguished. CASSODAY, C. J., dissents.

3. In order that the wrongdoer may derive any advantage in an action of replevin from the failure of the licensee to reimburse to him such expenses, his refusal to deliver the timber to the latter must have been put upon that ground.

APPEAL from a judgment of the circuit court for Ashland county: JOHN K. PARISH, Circuit Judge. *Reversed.*

Replevin for a quantity of pine lumber. The lumber was manufactured by the defendant from logs which he cut, without authority, from certain lands which the Wisconsin Central Railroad Company acquired in 1884 from the state, under its land grant, and then owned. In 1885 the Wisconsin Central Railroad Company, by an instrument in writing, bargained and sold, granted and conveyed, to the Superior Lumber Company, and to its assigns, the right to cut and remove, for its own use, during the period of twenty years, "all the pine timber standing and being" on the said

lands, for a full consideration, of which it acknowledged the receipt. This instrument was executed by the railroad company and its trustees by its attorney in fact, Charles L. Colby, and sealed with a scroll, but was not signed by the president of the corporation, nor countersigned by its secretary. This license was afterwards duly assigned to the plaintiff. In 1887, by an instrument in writing, executed by the same persons and in the same manner as the license to the Superior Lumber Company was executed, the Wisconsin Central Railroad Company bargained and sold, granted and conveyed, to the defendant, the same lands; reserving, however, to itself, its successors and assigns, all the pine timber growing or to grow thereon, with the right to enter thereon, and remove the timber, at pleasure. The defendant cut and removed the timber and manufactured it into lumber. The plaintiff made demand for the lumber, and, on refusal by the defendant to deliver it, brought this action. The property was delivered by the sheriff to the plaintiff, who sold it during the pendency of the action. There was a verdict for the defendant. There was judgment for the defendant for the value of the property at the time of the commencement of the action, with interest from that date, from which the plaintiff appeals.

For the appellant there was a brief by *Tomkins & Merrill,* and oral argument by *W. M. Tomkins.* They argued, among other things, that even if the conveyance from the Wisconsin Central Railroad Company to the plaintiff was a mere license, still, as the license amounts to a power or authority to do all the acts licensed, the licensee as against strangers has all the rights of the licensor and may hold them responsible for any interference with the enjoyment of the privilege given him. 7 Wait, Act. & Def. 213; *Sawyer v. Wilson,* 61 Me. 529. As fast as the timber was cut it became personal property with the right of possession in the plaintiff. *Spalding v. Archibald,* 52 Mich. 365; *White v.*

*King*, 87 id. 107; *Freeman v. Underwood*, 66 Me. 229. If the plaintiff had a right to the use of the property at will it had a right to replevy it from a wrongdoer. *Tandler v. Saunders*, 56 Mich. 142; *Bassett v. Armstrong*, 6 id. 397.

For the respondent there was a brief by *A. E. Dixon*, attorney, and *Olin & Butler*, of counsel, and oral argument by *J. M. Olin* and *H. L. Butler*.

NEWMAN, J. The instrument under which the plaintiff claims title to the lumber in controversy is a mere license to cut and remove the timber. This is clear from its express terms. A license to cut timber is assignable, whether made so by express words or not. 13 Am. & Eng. Ency. of Law, 1031. This license is made assignable by express words. So, the plaintiff had the right to cut and remove this timber, and make it his own, at pleasure, at any time within the limited period, at least, unless the license should be sooner revoked. Whether the license gave such an interest in the timber to the licensee as that it should be deemed irrevocable by the licensor, it is not important to inquire. In either case the title to the timber did not pass to or vest in the licensee until it should be severed from the land. The mere license to cut and remove the timber did not vest the title to the timber in the licensee. So, until the fact of its severance, the licensee has no title in the timber, such as would support an action of replevin; for, to maintain an action of replevin, the plaintiff must have the general or a special property in the property replevied, and the right to immediate and exclusive possession, at the time when the action is commenced. In the action of replevin the principal question is the right of immediate possession. Where that right depends upon the title, the issue is one of title. Now, as a mere licensee to cut timber gets no title to the timber until it is actually severed, and this timber was cut by a wrongdoer, and not by the licensee, the case comes to depend on this

Keystone Lumber Co. vs. Kolman.

question: Whether the title to the timber, when cut by a trespasser, vests in the licensee, so as to give him sufficient title to maintain replevin against the mere trespasser. This question is not decided by any case in this court to which attention is called, or which has been found. A question which, on a superficial view, may seem to bear some analogy to this question, has been decided by this court. It has been decided that, where timber or minerals have been severed by the owner of the land, the title to the timber or minerals so severed does not vest in a mere licensee, so that he can maintain replevin for them against the owner of the land. *Gillett v. Treganza*, 6 Wis. 343, is a leading case upon that question. The reason is plain. Severance by the owner operates as a revocation of the license, at least *pro tanto;* and the title, not having passed before severance, will not pass by severance after the license has been revoked. But that question has little, if any, analogy to the question in the instant case.

This question is whether a licensee under an unrevoked license to cut and remove timber, for which he has paid full value, has sufficient title in the timber covered by his license to support replevin for the timber when wrongfully cut by a trespasser. This question does not seem to have often been passed upon by the courts. The case of *Gamble v. Cook*, 64 N. W. Rep. 482, seems to be in point. In that case it was held by the supreme court of Michigan that a vendee in a land contract which gave him the right of possession and to cut and remove timber had title in the timber sufficient to maintain replevin for timber cut by a mere trespasser. No doubt, in that case the legal title to the timber was in the vendor until the severance by the trespasser. No reason is perceived why that case is not sound in principle. The trespasser gets no legal title or right in the timber through his wrongful act, as against any person who has a legal right or interest in it. The

licensor has no just claim, for he has sold it, and has had his pay. He makes no claim. He is not injured. To preserve the fiction of legal title in him, beyond the severance, can have no other effect than to obstruct justice. In justice, the severed timber should belong to the licensee, who has bought and paid for it. He might have employed the trespasser to cut and remove it. In that case there would be no doubt that the title to the severed timber would be in him. No reason is perceived why, when the timber is cut by one unauthorized, the licensee may not at once assume possession of it; why he may not adopt the act of the wrongdoer, in the severance, as his own, and ratify, so to speak, the unauthorized act,— somewhat in analogy to the principle by which the unauthorized acts of agents are ratified or a tort is waived. That view has the merit, at least, of doing complete justice among the parties.

But, if the plaintiff adopts or ratifies the acts of the defendant in the severance of the timber, it must adopt them in full. It must adopt as well that part which carries a burden as that which is to its benefit. In the view which has been taken, the wrongful acts of the defendant have proved, on the whole, to have been a real service to the plaintiff. If the plaintiff adopts this benefit, it should reimburse the defendant what he has reasonably disbursed in its service. The plaintiff should recover the lumber or its value, after paying the defendant the reasonable cost of such enhancement of its value as has resulted from his expenditures upon it. Perhaps the defendant was entitled to retain possession of the lumber until such costs were paid; but it does not appear that his refusal to deliver it to the plaintiff was put upon any such ground.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.

Cassoday, C. J. I agree with that portion of the opinion filed which is to the effect that the written "instrument

under which the plaintiff claims title to the lumber in controversy is a *mere* license;" that "the mere license to cut and remove the timber did not vest the title to the timber in the licensee;" that, until severance, the licensee had "no title in the timber" that "would support an action of replevin;" that, "to maintain an action of replevin, the plaintiff must have the general or a special property in the property replevied, and the right to immediate and exclusive possession, at the time when the action is commenced." But I am compelled to dissent from the conclusion reached to the effect that the plaintiff may, without any such title vested in itself, and with the title vested in the railroad company, maintain this action, merely because the timber was wrongfully severed by the defendant. That this license to cut and remove timber from the land of the railroad company was revocable, and vested no title or interest in the plaintiff, is settled by numerous adjudications of this court. *Hazelton v. Putnam*, 3 Pin. 107; *Clute v. Carr*, 20 Wis. 531; *Duinneen v. Rich*, 22 Wis. 550; *Fryer v. Warne*, 29 Wis. 511; *Strasson v. Montgomery*, 32 Wis. 52; *Golden v. Glock*, 57 Wis. 118; *Thoemke v. Fiedler*, 91 Wis. 386. Some of these cases held that such a license is not assignable. I do not think the decision in this case is supported by *Gamble v. Cook* (Mich.), 64 N. W. Rep. 482, cited in the opinion filed. In that case it was held that "the vendee under a land contract, with the right to cut and remove timber, *has title* sufficient to maintain replevin for timber cut on the land by a mere trespasser." In that case the vendee had paid all the purchase money, and had taken possession of the land, and so was not a mere licensee, as here, but the real owner. Such contract gave the vendee a vested interest in the land and the growing timber, which could have been specifically enforced. *Young v. Lego*, 36 Wis. 394; *Lacy v. Johnson*, 58 Wis. 422; *Lillie v. Dunbar*, 62 Wis. 198. The decision in the case at bar allows the plaintiff to recover on the ground that it waived the defendant's tort, and adopted his wrong-

ful act in severing and removing the timber. But there is
nothing in the complaint nor in the record indicating such
waiver. On the contrary, the complaint expressly alleges,
in effect, that the plaintiff was the owner, and entitled to
the possession, of the lumber, and that the defendant wrong-
fully took and unlawfully or wrongfully detained the same
from the plaintiff. Besides, the tort (the wrongful act com-
plained of) was not, and could not in law be, wrongful as
against one not having any title or vested interest in the
timber, but was necessarily wrongful as against the one hav-
ing the legal title and exclusive right to the timber; and the
plaintiff could not, as it seems to me, vicariously waive such
tort for the legal owner. For aught that appears, the de-
fendant is liable in law to the railroad company for all the
timber he so cut and removed. But the decision in this
case, as I understand it, only allows the plaintiff to recover
on condition that it "reimburse the defendant what he has
reasonably disbursed in its service;" that it "should recover
the lumber or its value" only "after paying the defendant
the reasonable cost of such enhancement of its value as has
resulted from his expenditures upon it;" and indicates a
possibility of the defendant's being "entitled to retain pos-
session of the lumber until such costs were paid." To carry
out these suggestions would seem to require an equitable ac-
counting as to the reasonable value of the defendant's serv-
ices and disbursements of cutting and removing the timber,
and putting the same in the condition it was found at the
time this action was commenced. Such an accounting would
seem to be an anomaly in a straight action of replevin, like
this, and does not seem to be contemplated in the verdict
and judgment prescribed by the statutes. R. S. secs. 2859,
2888. For the reasons hastily and thus summarily given, I
am forced to disagree with my brethren.