CHARLES P. MARTIN *vs.* MELVILLE JOHNSON.

Penobscot. Opinion February 24, 1909.

*Trover. Contracts. Logging Permits. Title. Revocable Licenses. Cutting by Trespassers.*

In order for a plaintiff to maintain trover, he must have such a general or special property in the goods in question as entitles him to immediate possession.

When a written permit to cut timber is under seal and exclusive, title passes to the permittee as soon as the timber is severed either by himself or a trespasser. Title in such cases passes by reason of the executory contract and not because the permittee himself does the cutting.

In May, 1904, the owners of a township of wild land by written contract not under seal granted the plaintiff "permission, during the ensuing logging season only, to enter with four horses or more teams upon mile squares numbered 9-10-11-15-16-17 and 18 . . . and to cut and remove therefrom, spruce, cedar, fir and pine timber suitable for logs." Also in May 1904, the same owners gave to one Worster a written permit not under seal,

" during the ensuing logging and bark peeling season only " to enter upon mile squares numbered 1-2-7-8-13 and 14 in the same township and cut and remove bark and timber therefrom. In the course of his operation upon lot 8 Worster got over the line and cut certain spruce logs and railroad ties from lot No. 9 which was embraced in plaintiff's permit. The defendant received the logs and ties cut on lot 9, and thereupon the plaintiff's brought an action of trover against the defendant for the value of the same.

*Held* (1) That the plaintiff's permit did not convey any interest in the land or in the standing timber, but was an executory contract for the sale of timber when severed from the soil and converted into personal property, coupled with a revocable license to enter upon the land for the purpose of cutting and removing it.

(2) That the permit was not exclusive but applied only to such timber as might be cut by the plaintiff himself or those acting under him.

(3) That the cutting by a mere trespasser upon one of the lots permitted to the plaintiff did not give the plaintiff any property in the logs, when severed. They still belonged to the landowner to whom the trespasser and not the plaintiff was liable for the stumpage.

*Freeman* v. *Underwood*, 66 Maine, 229, distinguished.

On report. Judgment for defendant.

Trover for the alleged conversion of 377 spruce logs, 250 standard railroad ties, and 200 cedar electric ties. Plea, the general issue with brief statement alleging that the title to the logs and lumber was not in the plaintiff.

Tried at the October term, 1907, Supreme Judicial Court, Penobscot County. At the conclusion of the testimony, the parties agreed to report the case to the Law Court for decision upon so much of the evidence as was "competent and legally admissible."

The case is stated in the opinion.

*Martin & Cook*, for plaintiff.

*J. H. Burgess, and P. H. Gillin*, for defendant.

SITTING: EMERY, C. J., SPEAR, CORNISH, KING, BIRD, JJ.

CORNISH, J. On May 2, 1904, Henry Prentiss as agent for the owners of a township of wild land known as North Yarmouth Academy Grant, by written contract, not under seal, granted the plaintiff "permission, during the ensuing logging season only, to enter with four horses or more teams, upon mile squares numbered 9-10-11-15-16-17 and 18 . . . . and to cut and remove

therefrom, spruce, cedar, fir and pine timber suitable for logs" under certain conditions and restrictions not material here. In the fall of 1904 the plaintiff went upon the premises with six horses, located his camp on lot 18 toward the easterly part of the township, and operated throughout the logging season.

On May 4, 1904, Mr. Prentiss gave to one Worster a written permit, not under seal, "during the ensuing logging and bark peeling season only," to enter upon mile squares numbered 1-2-7-8-13 and 14 in the same township and cut and remove bark and timber therefrom. Worster also in the Fall of 1904 went upon the premises permitted to him and operated upon lots 1-2-8 and 14 toward the westerly part of the town during the same logging season. In the course of his operation upon lot 8 Worster got over the line and cut certain spruce logs and railroad ties from lot No. 9 which was embraced in plaintiff's permit. The defendant Johnson financed Worster in his winter's operation, and, as the plaintiff claims, received the logs and ties cut on lot No. 9. The plaintiff paid Prentiss for the timber cut under his permit and Johnson paid Prentiss for the timber cut under the Worster permit and also that cut on lot 9, without authority.

On August 2, 1906, the plaintiff brought this action of trover against Johnson to recover the value of the timber cut and removed by Worster from lot 9.

The single question is whether a licensee under an unrevoked license of this sort can maintain trover to recover the value of timber cut and removed by a trespasser. A mere statement of elementary principles answers the question in the negative.

In order for a party to maintain trover, he must have such general or special property in the goods in question as entitles him to their immediate possession. *Haskell* v. *Jones*, 24 Maine, 222; *Ames* v. *Palmer*, 42 Maine, 197; *Ekstrom* v. *Hall*, 90 Maine, 186.

The plaintiff's claim of title rests wholly on his parol permit, and that is inadequate for the purpose. The legal effect of such a permit has often been defined in the decisions of this court. It does not convey any interest in the land or in the standing trees but is

an executory contract for the sale of timber after it shall have been severed from the soil and converted into personal property, coupled with a revocable license to enter upon the land for the purpose of cutting and removing it. *Emerson* v. *Shores*, 95 Maine, 237 ; *Pierce* v. *Banton*, 98 Maine, 553. The contract in this case was not exclusive ; It did not cover all the timber on the lots ; it applied to only such timber as might be cut and removed by the licensee himself or those acting under him during the specified time. The tract upon which he was allowed to enter was a large one but he was given no property in or rights over any timber not embraced in his own operation. He was given the right to enter upon seven lots, but the land owner did not expressly agree to refrain from cutting himself or from permitting others to cut thereon. Perhaps if such cutting by the owner, or by others with the permission of the owner, should interfere with the work of the plaintiff so as to prevent his obtaining what he would otherwise have cut, it might be regarded as to that extent a revocation of the license and the owner might be liable in damages for a breach of the executory contract. But no title to the lumber so cut would thereby be conferred upon the plaintiff. *Gillett* v. *Treganza*, 6 Wis. 343. Had the permit been under seal and exclusive, title would have passed to the permittee as soon as the timber was severed either by himself or a trespasser. Title in such case would pass by reason of the executory contract and not because the permittee himself did the cutting. This was decided in *Freeman* v. *Underwood*, 66 Maine, 229. In that case the permit was under seal, the right granted was exclusive and the property in the berries picked even by a trespasser was held to be in the licensee. In the case at bar the permit was not under seal, the right granted was not exclusive and herein lies the distinction.

It follows therefore that the cutting by a mere trespasser upon one of the plaintiff's permitted lots did not give the plaintiff any property in the logs when severed. They still belonged to the land owner to whom the trespasser and not the plaintiff was liable for the stumpage. The plaintiff's contract did not cover them.

The only case cited by the plaintiff in support of his contention is *Keystone Lumber Co.* v. *Kohlman*, 94 Wis. 465, 69 N. W. 165, but that decision, even if accepted as sound doctrine, is not in point. In that case the Wisconsin Central Railroad Company had conveyed to the plaintiff's assignor, the right to cut and remove for its own use, during the period of twenty years, all the pine timber standing on certain lands for a full consideration which was paid in advance. Subsequently the Railroad Company conveyed the lands to the defendant Kohlman, reserving to itself all the pine timber standing thereon with the right to enter and remove the same. The defendant, without right, cut and removed the timber and manufactured it into lumber, and the plaintiff, after demand, brought replevin to recover the property, which suit was sustained by a majority of the court. The ground of the decision was that the trespasser admittedly had no title and the licensor had no just claim for he had sold it and received his pay. He was not injured. "To preserve the fiction of legal title in him, beyond the severance can have no other effect than to obstruct justice. In justice, the severed timber should belong to the licensee who has bought and paid for it." The opinion further holds that the plaintiff could waive the defendant's tort and adopt his wrongful act in severing and removing the timber; but he must adopt all his acts, if any, and therefore should be allowed to recover the lumber only upon reimbursing the defendant for all expenses connected with its enhanced value.

Chief Justice Cassoday, in his dissenting opinion, points out with clearness and vigor the anomolies in this decision where merely the question of legal title in a replevin suit and not an equitable accounting was in issue. Without adopting or rejecting the decision of the majority of the court, it is sufficient to note that the license was exclusive and the decision rested upon the full advance payment by the plaintiff for all the standing timber on the land. For this reason the court attempted to work out certain equities in the plaintiff's favor.

The case at bar lacks this fundamental fact, and therefore the equities. The plaintiff has never paid the stumpage on the timber

cut by the trespasser Worster but the defendant did pay it to the land owner who knew of the trespass when he received his pay. Moreover the evidence is clear that the plaintiff's operation did not reach within one mile of lot 9, so that Worster's cutting in no way interfered with him or embraced timber which he could by any possibility have cut himself. It would have remained uncut when his permit expired.

The plaintiff has failed to show any legal title enabling him to maintain this suit, and the entry must be,

*Judgment for defendant.*