STATE OF MAINE

YORK, SS.

STATE OF MAINE
COUNTY OF YORK
CLERK'S OFFICE
RECEIVED

MAY 16  10 17 AM '00
---

DONALD L. GARBRECHT
LAW LIBRARY

MAY 17 2000

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-96-238
TED-YOR - 5/16/00

JERRY D. MURPHY and
JUDITH H. MURPHY,

        Plaintiffs

v.

ALAN D. MADDAUS
and BARBARA E. MADDAUS,

        DefendantS

ORDER ON MOTION
TO ENFORCE SETTLEMENT

## I. BACKGROUND

A trial was previously held in this case during which an agreement for settlement was reached after substantial negotiation by counsel and the parties. The plaintiffs have now moved the court to require the defendants to comply with the terms of the settlement agreement.

On the second day of trial the parties informed the court they had been "talking" and were making progress towards an agreed disposition or settlement. They spent the better part of the day caucusing separately then huddling to iron out the details. About mid-afternoon the court was informed that an agreement had been reached and counsel wished to put the details of the settlement on the record. Counsel would then confer to prepare any necessary memoranda or documents and cause them to the executed.

After several extensions were granted to allow final preparation of the settlement agreement and execution of documents, the plaintiffs allege that

negotiations broke down over the language applicable to several points and that it was the defendants who prevented this matter from being finalized and closed.

## II. SETTLEMENT AGREEMENT

The settlement as recited in court by defendants' counsel as the agreement of counsel and the parties is as follows:[1]

1. The parties will enter into a formal written settlement agreement.

2. The defendants (Maddaus) will give the plaintiffs (Murphy) permission to use a triangle of the lot in question.

3. The triangle starts at the Bayberry Lane end of the common boundary of the Murphy lot and the Maddaus lot as shown on the Anderson/Livingston survey and proceeds 12.5' northerly and joins the common boundary line 40' away from Bayberry Lane.

4. Murphy will pay up to $1,000 for the removal of a section of the chain link fence and to reinstall a 6' high scalloped cedar fence. Any expense in excess of $1,000 is the responsibility of Maddaus.

5. The fence will face the Murphy lot and will be placed along the Maddaus side of the triangle.

6. Maddaus will make arrangement for removal of the chain link fence and installation of the new cedar fence.

7. Murphy agrees that they will not trim bushes or grass or cut trees in the Bayberry Lane right-of-way except in front of the triangle in question.

8. Murphy will dismiss all claims with prejudice.

9. Each party is responsible for their own costs of litigation, including attorney fees.

10. Murphy will accept the Anderson/Livingston survey as accurately defining the common boundary of the land described in their deed and as accurately defining the boundary of the land in the Maddaus deed to lot 9-11.

---

1. As reflected in the partial transcript filed with plaintiffs' motion.

2

11. Murphy agrees to remove a clothes line attached to a tree on the Maddaus property.

12. Murphy will not oppose any use of the Maddaus lot (no. 9-11) that meets the setback requirements along the common boundary nor will Murphy oppose any building that meets the town building code; however, because the Murphy well is located close to the common boundary, Murphy reserves the right to comment upon any application by Maddaus for a septic system or well.

13. "The Murphys agree that they will not contest a request for a waiver or variance if the license to use the triangle of the property interferes with the granting of a permit by the town or other authority based upon setback or shoreland requirements."

14. "If the existence of the license to use the triangle is the factor that defeats . . . the Maddauses' ability to construct a residence on the lot [9-11], then the license will expire."

15. Final determination of approval or denial of an application includes appeals through the administrative process if necessary.

16. All parties agree that any plan for improvement of lot 9-11 submitted to the Town of York by the defendants "will be in conformance with the setback, shoreland, and other applicable regulations based upon the boundaries established by the Anderson/Livingston survey."

The license that is granted to Murphy by Maddaus pursuant to this agreement will expire on the occurrence of the earlier of the following events:

a. the Murphys transfer of any interest in their property;

b. the latest date of death of either of the plaintiffs; or

c. the rental of either the Murphy home or lot (no. 9-10).

III. SETTLEMENT DISAGREEMENTS

On review, the court finds that all parties agreed to the terms stated on the record in court. Except for memorializing the terms in writing, the points of contention were settled and resolved. The court agreed.

3

Plaintiffs now contend that defendants wrongfully refuse to execute documents that accurately reflect the in-court settlement:[2]

## A. PARAGRAPH 5(d)

Paragraph 5(d) states as follows:

5.    The license . . . will automatically terminate at the occurrence of one of the following events:

. . . .

(d)    If existence of the license is the exclusive basis for defeating . . . the ability to construct a residence on Lot 9-11 . . . ."

The defendant seeks language as follows:

Denial, through the administrative process . . . of a permit, license, or other approval, which has the effect of preventing the defendants from constructing a residence on [lot 9-11] . . . exclusively as a result of the license.

The court finds that the defendants' preferred language is a departure from the in-court recitation; however, it is a distinction without a difference. If Maddaus is unable to construct a residence on the lot and the *only* reason for the denial is the existence of the license, then it terminates. The court reads each version to accomplish this result and that plaintiffs' counsel reads too much into the defendants' proposed language.

The court also finds, based on the in-court recitation, that the license would terminate if the defendants were unable to construct a residence:  "A residence" meaning any residence, not just one of their choosing. To permit the latter would

_____

2. Paragraph references by the court are to Exhibit C attached to plaintiffs' motion.

4

too easily defeat the freely negotiated settlement by only presenting a design that would clearly not meet town code, shoreland, or other regulations.

## B. PARAGRAPH 6

The disagreement presented here is whether any plan must comply with setback requirement for all lot boundaries or only the common boundary. In court, defendants' counsel stated that: "[T]he Maddauses agree that any plan for improvement . . . will be in conformance with . . . regulations *based upon the boundaries* established by the Anderson/Livingston survey . . . ." (Transcript, p. 7, lines 16-20). Again, to limit the plan to compliance only with the common boundary sets up the agreed settlement for certain failure.

## C. PARAGRAPH 8

Although not mentioned in court, a reasonable time frame to remove the chain link fence, erect the cedar fence, and to remove the clothesline (paragraph 11) is appropriate. Unfortunately, the passage of time has made this difficult through no fault of the parties. All tasks required of either party ought to be performed within a reasonable time and as contemporaneous as possible with the parallel obligations of the other party. If counsel cannot agree upon a reasonable time frame they shall inform the court which will arbitrarily select deadlines applicable to both parties to perform obligations placed upon them by the settlement agreement.

## D. PARAGRAPHS 9 AND 10

Like the differences in paragraph 5(d), any dispute in the language applicable here is minuscule. It is clear from the context of the case that plaintiffs seek to use the area in question as part of their driveway. It is therefore essential that they be

5

able to keep the area between the boundary along the Bayberry Lane right-of-way and the travel portion of the road open and free of brush and obstructions. On the other hand, they may not cut or trim grass, brush or trees in front of the Maddaus lot [9-11] that borders Bayberry Lane. See transcript p. 5, lines 19-23. Objections to language that refers to lot 9-11 as "northerly of the triangular parcel" are frivolous and pointless.

## E. PARAGRAPH 12

Objections to the language of either party are frivolous and pointless. The clear intent of the parties is that if the existence of the license to the Murphys, by itself, prevents the defendants from obtaining a residential building permit, then the license for the triangle is extinguished. Although the transcript does not specifically refer to compliance with the town zoning ordinances, the inclusion of the references to the "town building code," transcript p. 6, lines 20-21, and "setback or shoreland requirements, p. 7, lines 10 and 18, necessarily includes compliance with zoning ordinances and "other applicable regulations."

## F. PARAGRAPH 14

The plaintiffs have inserted into their version of the written agreement that the settlement agreement is binding upon any successors-in-interest. The defendants object and recite that a license is "a revocable personal privilege" granting limited rights in land to the licensee, *see Reed v. A.C. McLoon & Co.,* 311 A.2d 548, 552 (Me. 1973); that a license does not confer an interest in land, *see Burnham v. Burnham,* 156 A. 823, 825 (Me. 1931); and, a license in land can be revoked at will unless it contains terms limiting the ability of the licensor to revoke

6

the privileges for a period of time. *See Brown v. Bishop*, 74 A. 724 (Me. 1909) and *Martin v. Johnson*, 73 A. 963 (Me. 1909). Such is the case here.

The terms clearly contemplate the continuance of the license until one of the four conditions in paragraph five occur. All conditions relative to termination relate to conduct or events by the plaintiffs, actions controlled by their conduct (except death). It is inconceivable that the plaintiffs would agree to the settlement terms if the license could be defeated by a simple transfer of defendants' interest, even in a transaction specifically designed to defeat this license. Defendants' successors-in-interest are bound by the agreement.

## IV. CONCLUSION AND ORDER

The court finds that the parties entered into a valid and binding settlement. All parties shall execute all appropriate documents necessary to effect the final agreement as agreed to by the parties and as set forth by the court herein.

The clerk shall incorporate this order into the docket by reference pursuant to M.R. Civ. P. 79(a).

So ordered.

DATED: May 15, 2000

Thomas E. Delahanty II
Justice, Superior Court

```
S. James Levis, Jr., Esq.   -   PL
Anne C. Carney, Esq.   -   DEF
```

7

STATE OF MAINE                                          SUPERIOR COURT
York, ss.                                              Civil Action
                    SEP 15  11 08 AM '00              Docket No. CV-96-238

                                                      TED- 9/15/2000-YOR

JERRY D. MURPHY and
JUDITH H. MURPHY,           DONALD L. GARBRECHT
                            LAW LIBRARY
        Plaintiffs
                            SEP 18 2000              ORDER ON DEFENDANT'S
    v.                                               MOTION FOR RELIEF

ALAN D. MADDAUS
and BARBARA E. MADDAUS,

        Defendants


        The relevant history of this case is recited in the court's Order of May 15, 2000.

It is not necessary to repeat it here.

        In that Order the court included a provision that the "license" granted by

defendants to plaintiffs is also binding on defendants' successors-in-interest.

        To this part of the Order, the defendants have filed a motion seeking relief

under Rule 60(b)(6), M.R.Civ.P.

        Rule 60(b) allows substantial latitude to the court to alter or amend a prior

Order or judgment for any of several enumerated reasons. Defendants have not set

out specific reasons as listed in parts 60(b)(1) through (5). Instead, their motion is

based on the "catch-all" part of 60(b)(6), *Maine Civil Practice 2nd*, Harvey, McGuire

and Wroth, § 60.11, 1981 Supp., basing their request "on any other reason justifying

relief from the operation of the [Order]." In essence they ask for reconsideration of

points raised in their memoranda filed in response to plaintiff's original Motion to

Require Compliance with Settlement Agreement and previously considered by the

court. A motion under Rule 60(b) is addressed to the sound discretion of the court. *Reville v. Reville*, 370 A.2d 249, 252 (Me, 1977). "A collateral attack upon a final [order] as provided by Rule 60(b), M.R.C.P. does not have the same effect of a direct appeal and, therefore, does not per se reopen the case for reconsideration on its merits." *Id.* [1] Court action granting relief under Rule 60(b)(6) "requires a showing of injustice in the original [order]. . . . It is necessary that judgments, especially those settling property rights as in this case, have a high degree of finality and stability." *Merrill v. Merrill*, 449 A.2d 1120, 1125 (Me, 1982).

In support of their position the defendants argue, *inter alia*, that a license is a revokable grant of personal privilege that does not create any interest in the property to the licensee and does not extend plaintiffs' privilege to use the property. *See Reed v. A.C. McLoon & Company*, 311 A.2d 548, 552, n. 7 (Me. 1973) ("A license creates no interest in land, may be created orally, and is revokable, unless coupled with an interest."). They further argue that extending the license to their successors-in-interest was not part of their settlement agreement.

In their recitation of the terms of the settlement, the parties referred to the Murphys' use of the disputed areas as "permission" or a "license."[2] Neither side

---

1. The court's order was dated May 15, 2000, and entered on the docket on May 16, 2000. Concurrent with the present motion, the defendants filed an appeal to the Law Court on June 16, 2000, which was 31 days after the entry of the Order appealed from. Rule 73(a), M.R.Civ.P., requires that an appeal to the Law Court must be taken within "30 days from the entry of the judgment appealed from. . . ."

2 See transcript of settlement recitation: pg. 4 , lines 17-A M.R.S.A. §-A M.R.S.A. §-A M.R.S.A. §-18; pg. 7, line 1; and, pg. 8, lines 21-22.

2

called it an easement that would create certain interests or rights for the Murphys in the land itself. Clearly, the settlement agreement was to permit the Murphys' use of the area for a period of time, limited by the occurrence of one of several specified events.

The primary issue here is whether revocation of the license is limited by the terms of the agreement to settle; that is, on the occurrence of the first of the enumerated events. Whereas the license expires on the death of the plaintiffs, it is certain that the license will expire at some point in time. Without such limitation there is no incentive for the Murphys to forego further prosecution of their claim; otherwise the court is left to the determination that the defendants did not approach or participate in the lengthy settlement discussions in good faith: A mere sham transfer to a third party would defeat the plaintiffs' authorization to use the premises.

The general rule that a license is revocable at the discretion of the licensor is subject to some exceptions. 25 Am. Jur. 2d, *Easements and Licenses*, § 143. These exceptions include circumstances where the license is coupled with a grant or interest, where it has become executed, or where the licensee has expended money or its equivalent in labor, in execution of the license. *Id*.

In this case, the agreement to settle calls for the Murphys to pay for the removal of a fence and installation of a new one up to $1,000 00, not to trim bushes or grass or cut trees in a certain area, to dismiss their claims with prejudice, to accept

3

the survey declaration of the common boundary, to remove a clothes line, and not to oppose any application by defendant for permits to build on the lot.

A license is not always revokable at will. The Law Court has held that a license could not be revoked while a contract to cut timber was in effect. *Brown v. Bishop*, 74 A. 724, 105 Me 272, 282 (1905).

The settlement agreement calls for more than a mere license from the Maddauses granting use of the area to the Murphys. The license is conditional and is binding on defendants' successors-in-interest.

The entry will be:

Defendants' Motion for Relief is denied.

So Ordered.

DATED: September 14, 2000

Thomas E. Delahanty II
Justice, Superior Court

PLAINTIFFS:
S JAMES LEVIS JR ESQ
LEVIS & HULL
409 ALFRED ST
BIDDEFORD ME   04005


DEFENDANTS
ANNE C CARNEY ESQ
NORMAN HANSON & DETROY
PO BOX 4600
PORTLAND ME 04112-4600

4

STATE OF MAINE
York, ss.

SUPERIOR COURT
Civil Action
Docket No. CV-96-238

JERRY D. MURPHY and
JUDITH H. MURPHY,

Plaintiffs

v.

ALAN D. MADDAUS and
BARBARA E. MADDAUS,

Defendants

ORDER ON
DEFENDANTS' MOTION
FOR ENTRY OF JUDGMENT

## I. STATUS OF CASE

The factual and procedural history that leads to the present motions before the court is outlined in the court's Order dated May 15, 2000. In that Order the court ordered that "[a]ll parties shall execute all appropriate documents necessary to effect the final agreement as agreed to by the parties and as set forth by the court herein."

On June 16, 2000 the defendants filed a motion under M.R.Civ.P. 60(b)(6) seeking relief from the Order on the basis that it was "contrary to the evidence and is based upon erroneous application of the law." After a conference with counsel, the court denied the Motion for Relief.

Along with the 60(b) motion, the defendants simultaneously filed a Notice of Appeal to the Law Court which appeal was subsequently dismissed on September 20, 2000 as untimely.

While these matters were pending the parties agreed to participate in a settlement conference with a different Superior Court justice who had no prior exposure

to this case. The effort to resolve the case was unsuccessful.

The defendants have subsequently filed an additional motion for entry of judgment pursuant to M.R.Civ.P. 58 asserting that the court's prior Order to Enforce Settlement was not a final judgment. Entry of judgment as requested by the defendants would, *inter alia*, reinstate their time to appeal. In turn, the plaintiffs filed their own Motion to Compel Compliance with the settlement agreement. The court is familiar with the position of the parties and enters this Order without further hearing.

The issue before the court is whether the Order of May 15, 2000 constituted a final judgment.

The defendants maintain that the Order in question was not a final judgment for several reasons: That it was not called a judgment; the docket entries did not refer to it as a judgment; the terms of the Order required additional action by the parties; and, the court took further action by ruling on defendants' 60(b) motion and by submitting the action for a settlement conference.

The plaintiffs argue that the Order qualifies as a final judgment and they are entitled to have it enforced.

## II. DISCUSSION

In order to resolve the dispute regarding the settlement arrived at by the parties, the court reviewed the terms and conditions of the agreement as recited by defendants' attorney in court on the record and entered the "Order" of May 15, 2000 to enforce the terms thereof and reach an end result for this litigation. *See*

2

*Transamerica Commercial Finance Corp. v. Birt*, 599 A.2d 65 (Me. 1991) (A court may enter judgment on a settlement agreement, incorporating the terms of the settlement agreement into the judgment.)

Proper entry of judgment on the docket is required to ripen the parties' right to appeal. *See Rossignol v. Raynes*, 650 A.2d 935, 937 (Me. 1994); M.R. Civ. P. 58. Although the court's decision was styled and entered as an "Order," it was the intent of the court to memorialize and enforce the settlement agreement to achieve finality. In practice, a formal document labeled "judgment" is not always prepared. *See York Mutual Ins. Co. of Maine v. Mooers*, 415 A.2d 564, 566 (Me. 1980) (citing *Maine Civil Practice*, Vol. 2, Field, McKusick & Wroth, § 54.2 (2d. ed. 1970)). "No particular form is required for such direction of entry of judgment so long as it reflects an adjudication of the dispute before the court." *Mooers*, 415 A.2d at 566.

"Despite this customary informality, the judgment, which is the adjudication by the court, must be distinguished from an opinion of the court or a statement of the court's findings of fact and conclusions of law." *Id.* (citing *Burt Co. v. Burrowers Corp.*, 182 A.2d 481, 483 (Me. 1962)). Action by the Superior Court constitutes a final judgment if it "fully decides and disposes of the whole cause leaving no further questions *for the future consideration and judgment of the Court." Allen v. Cole Realty, Inc.*, 325 A.2d 19, 21 (Me. 1974) (emphasis added). The Law Court has indicated that a judgment must determine the respective rights, duties and liabilities of the parties; a mere order to the clerk to enter "judgment for the defendants" is insufficient. *See Mooers*, 415 A.2d at 566.

The fact that the court's decision was called an "Order" and not a "Judgment"

is not determinative. In the May 15th Order the court made an adjudication of the dispute before the court. Pursuant to the agreement of the parties, all rights, duties and responsibilities were assigned. The only matters to be concluded were the ministerial tasks by the parties to execute and record the proper documents, as frequently occurs in litigation involving real estate. There were no further issues requiring action by the court. *See Allen*, 235 A.2d at 21; and *Gilpatrick v. Glidden*, 19 A. 166, 167 (Me. 1889) (If further action is required, then an Order is not a final judgment.) Even traditional post-judgment items, such as attorneys fees and costs of litigation, were agreed upon by the parties and did not require further court action.

Action by the court to decide the Rule 60(b) motion or for the court to arrange a settlement conference do not change this from a final judgment to an interlocutory order of some kind. In fact, Rule 60, by its terms and title ("Relief from Judgment or Order"), contemplates court action after judgment and efforts to encourage or facilitate settlement at any stage does not effect the procedural status of a case.

### III. CONCLUSION

The May 15th Order fully determined all rights, duties and liabilities of the parties. It does not contemplate further negotiation or adjudication on substantive issues by the parties or further decisions by the court; in fact, the nature of the motion before the court did not present itself to the court for a "judgment" in the usual adversary process. Both parties addressed the court only on the terms and conditions of the settlement with the expectation that the court would enter an

Order setting out the parties' rights, duties and obligations. Although the parties differed as to their understanding as to the effect of the terms, both parties sought the court's resolution of their differences. Neither party sought to withdraw from the agreement and resume the litigation by continuing with trial.

The court finds that the Order of May 15, 2000 is, in fact, a final judgment.

## IV. DECISION

The clerk will make the following entries onto the docket as the decision and orders of the court on the parties' pending motions:

1. Defendants' Motion for Entry of Judgment is denied.

2. Plaintiffs' Motion to Compel Compliance is granted.

3. It is directed that all parties shall forthwith take all necessary and appropriate steps as directed by the court on May 15, 2000.

So Ordered.

March 13, 2001

_____
Thomas E. Delahanty II
Justice, Superior Court

S. James Levis, Jr., Esq. - PLS
Anne C. Carney, Esq. - DEFS